LAFFIN, and another, Appellants, v. CHEMICAL SUPPLY Co., and others, Respondents.

*No. 75-275. Submitted on briefs March 30, 1977.—*
*Decided May 3, 1977.*
(Also reported in 253 N. W. 2d 51.)

354

For the appellants the cause was submitted on the briefs of *Donald L. Bach, Burt P. Natkins* and *DeWitt, McAndrews & Porter, S. C.* of Madison.

For the respondents the cause was submitted on the brief of *W. Thomas Terwilliger, Terwilliger, Wakeen, Piehler, Conway & Klingberg, S. C.* of Wausau.

BEILFUSS, C. J. The issue is whether the president and plant superintendent of the employer company were coemployees of the injured plaintiff and liable for affirmative causal negligence as third parties under the Worker's Compensation Act.

From the pleadings and affidavits in support of and in opposition to the motion for summary judgment, the following undisputed material facts appear.

In June, 1972, the plaintiff-appellant, Vernon Laffin, was employed as a maintenance man by Wausau Metals Corporation. On June 22d he was working on a bulk acid storage and dispensing system when a puncture in the system occurred and he was sprayed with sulfuric acid.

Wausau Metals manufactures a variety of products, including aluminum windows. The manufacturing process requires dipping the aluminum into anodizing tanks containing a solution of sulfuric acid.

Until the spring of 1972, the acid utilized in the anodizing tank was purchased in 250 pound carboys. The acid

was poured from the carboys into the tank by various workers who would hoist the carboys over the top of the tank and pour the acid into it.

Arthur Flashinski, defendant-respondent, was the Wausau plant superintendent. He decided to install a new system for the storage and use of sulfuric acid. This was done for two reasons. One, it would reduce Wausau's cost, and two, it was thought that a new system would be safe in that it would reduce the handling of acid containers.

The system decided upon was a bulk storage and dispensing system. Prior to having the system installed, Flashinski, a graduate chemical engineer, conferred with defendant-respondent Laurence Niederhofer, the president of Wausau. Niederhofer approved the installation of the system. He did not see any diagrams or blueprints of the system. Flashinski also conferred with Robert E. Anderson of the Chemical Supply Company about the system. Flashinski knew that Chemical Supply handled a large quantity of bulk acids; he contacted Anderson concerning the materials to be used in the installation of the system. He was specifically interested in whether the sulfuric acid storage tank needed a liner. He also obtained information on what type of valves could be used to stop the flow of acid from the storage tank to the anodizing tank. Flashinski designed the bulk acid system himself. It was installed primarily by Laffin on instructions from Flashinski. The system was completed about May 1, 1972.

An elevated mild steel 4,000 gallon storage tank stood outside the Wausau premises. It contained sulfuric acid. Mild steel piping ran from the storage tank into the building to the anodizing tank. The last six-foot section of the pipe was made of polyvinylchloride (PVC). A PVC valve regulated the flow of acid into the anodizing tank.

On June 22d Laffin was informed that the outlet or shutoff valve would not open; it was malfunctioning. Laffin was unsuccessful in his attempt to open or remove the valve. He then attempted to remove the PVC pipe from a steel elbow beneath the sulfuric acid anodizing tank. While he was attempting to do this the PVC valve ruptured and he was struck by a forceful blast of sulfuric acid. After the accident Flashinski noted acid splashes on the ceiling of the plant about twenty feet above the anodizing tank.

At the time of the accident Arthur Flashinski was not on the premises—he was on vacation. Laurence Niederhofer was in the building but was unaware of the problem with the PVC valve and had no direct contact with Laffin.

Summary judgment was granted on April 8, 1975, on the basis that the harm caused was not a direct result of personal or affirmative acts of either Flashinski or Niederhofer. It was held that plaintiffs' exclusive remedy against Wausau and its president and plant superintendent was the Worker's Compensation Act.

Sec. 102.03(2), Stats., provides that worker's compensation pursuant to ch. 102 is an injured employee's exclusive remedy against the employer and the worker's compensation carrier. However, sec. 102.29 provides that a worker's compensation claim shall not affect the right to maintain an action in tort against a third party. "[E]mployees are within the class of 'third parties' within the meaning of the act. . . ." *Zimmerman v. Wisconsin Electric Power Co.*, 38 Wis.2d 626, 635, 157 N.W.2d 648 (1968). Thus if a corporate officer or supervisory employee is also a coemployee, the injured employee may maintain an action against the officer or employee. But if the officer or supervisor is merely

acting on behalf of the employer in his capacity as a corporate officer, a personal action against him may not be maintained. *Kruse v. Schieve,* 61 Wis.2d 421, 426, 213 N.W.2d 64 (1973).

This law was developed in a series of cases dealing with employees' actions against corporate officers or supervisory employees.[1] The policy behind this law is that worker's compensation is the exclusive remedy against an employer, and if there is a failure of an officer or employee to perform a duty owed to the employer, the employee's recourse is solely against the employer. When an officer or supervisor fails to perform the employer's duty, the failure is that of the employer, not the officer or supervisor.[2]

In *Kruse v. Schieve,* 61 Wis.2d 421, 213 N.W.2d 64 (1973), this court again stated that the duty to furnish a safe place of employment was the duty of the employer, in this instance Wausau Chemical, and that this duty cannot be delegated or placed upon the corporate officers. To do so would be inconsistent with the liability limitation of the Worker's Compensation Act. The liability of the corporate officers arises from a breach of a duty owed to the employee and must rest upon the common-law failure to exercise ordinary care.

---

[1] *Crawford v. Dickman,* 72 Wis.2d 151, 240 N.W.2d 165 (1976); *Kruse v. Schieve,* 72 Wis.2d 126, 240 N.W.2d 159 (1976); *Barth v. Downey Co.,* 71 Wis.2d 775, 239 N.W.2d 92 (1976); *Garchek v. Norton Co.,* 67 Wis.2d 125, 226 N.W.2d 432 (1975); *Ortman v. Jensen & Johnson, Inc.,* 66 Wis.2d 508, 225 N.W.2d 635 (1975); *Anderson v. Green Bay Hockey, Inc.,* 56 Wis.2d 763, 203 N.W.2d 79 (1973); *Pitrowski v. Taylor,* 55 Wis.2d 615, 201 N.W.2d 52 (1972); *Wasley v. Kosmatka,* 50 Wis.2d 738, 184 N.W.2d 821 (1971); *Hoeverman v. Feldman,* 220 Wis. 557, 265 N.W. 580 (1936).

[2] *Crawford v. Dickman,* 72 Wis.2d 151, 152–53, 240 N.W.2d 165 (1976).

■

The duty of the officer to supervise an employee is the duty owed to the employer, not to a fellow employee.[3] This duty is exercised in the normal course of the officer or supervisor's activities. It is when the officer or supervisor doffs the cap of officer or supervisor and dons the cap of a coemployee that he may be personally liable for injuries caused. If the officer or supervisor is to be personally liable it is because of some affirmative act of the officer or supervisor which increased the risk of injury to the employee. If a corporate officer or supervisor engages in this affirmative act, he owes the involved employee a duty to exercise ordinary care under the circumstances. This duty is over and beyond the duty of proper supervision owed to the employer.[4] It is the duty one employee owes another. The purpose of allowing third party actions in addition to worker's compensation was to retain "the traditional fault concept of placing responsibility for damages sustained upon the culpable party."[5] If an officer or supervisor breaches a personal duty, it does not offend the policy of the Worker's Compensation Act to permit recovery from the officer or supervisor.

In *Kruse v. Schieve*, 61 Wis.2d 421, 213 N.W.2d 64 (1973), this court discussed a number of cases where affirmative acts of an officer or supervisor created a common-law duty to exercise reasonable care. In *Hoeverman v. Feldman*, 220 Wis. 557, 265 N.W. 580 (1936), it was alleged that a corporation president carelessly directed an employee to operate a machine in a particular

[3] *Kruse v. Schieve*, 61 Wis.2d 421, 428, 213 N.W.2d 64 (1973).

[4] *Barth v. Downey Co., Inc.*, 71 Wis.2d 775, 783, 239 N.W.2d 92 (1976).

[5] Piper, "Problems in Third Party Action Procedure Under the Wisconsin Worker's Compensation Act," 60 Marq. L. Rev. 91, 92 (1976).

manner. It was this direct involvement beyond the typical duty of a corporate president that created the duty owed to the employee.

In *Wasley v. Kosmatka,* 50 Wis.2d 738, 184 N.W.2d 821 (1971), a corporate officer negligently operated a boom truck which caused the death of the employee. The plaintiff-appellant's theory of the case was that at the time of the accident the corporate officer was acting as a coemployee and was therefore subject to a third-party action. The plaintiff was attempting to recover pursuant to the safe-place statute. Recovery under the safe-place statute was denied; the duty to provide safe working conditions was held to be that of the employer. *Wasley* made it clear, however, that common-law standards of negligence would apply to an officer or supervisor acting as a coemployee.

In *Pitrowski v. Taylor,* 55 Wis.2d 615, 201 N.W.2d 52 (1972), the company president and a supervisory employee engaged in loading a truck. The accident was caused by the loading processes. This direct involvement created a duty to the injured employee beyond the duty the officer and supervisor owed to the company. In *Kruse v. Schieve,* 61 Wis.2d 421, 213 N.W.2d 64 (1973), it was noted that "something extra" is needed if the corporate officer or supervisor is to be personally liable. In *Pitrowski* that something extra was the direct involvement of the officer and supervisor in loading the truck. The officer and supervisor were involved in activities that were normally not performed in their capacity as president and supervisor. They therefore owed a personal duty to the injured employee.

In this case the issue is whether acts of President Niederhofer and Plant Supervisor Flashinski were over and beyond the duty they owed to their employer, Wausau. If they directly participated in the activity that caused the injury they would have been coemployees and as such owed a duty to Laffin to exercise ordinary care.

The appellants argue that Flashinski, by his active participation in the design and installation of the system, engaged in affirmative acts of negligence providing the something extra needed beyond the duty owed to the employer.

In *Anderson v. Green Bay Hockey, Inc.*, 56 Wis.2d 763, 771, 203 N.W.2d 79 (1973), it was stated that "specific questions concerning the status and conduct" of the arena manager and arena committee members were "questions of fact to be resolved after trial." In this case the status of Flashinski is clear, but whether his conduct in designing the storage system was that of supervisor or coemployee is a question of law that, arguably, can only be answered after further facts are adduced.

We conclude the design and installation of the bulk storage system by Flashinski was not an affirmative act that went beyond the nondelegable duty of the employer to furnish a safe place of employment. The design and installation of the system by Flashinski was for the stated purpose of reducing costs and to improve safety.

The plaintiff Laffin did most of the installation work at the direction of Flashinski but he was not injured at any time during the installation. He was injured several weeks after the system was operative in an attempt to remedy a malfunction in the operation. On the occasion of his injury he was not assisted by Flashinski nor even directed by him in any manner. Flashinski was not at the plant—he was on vacation. This is not the kind of affirmative negligent act of a coemployee that could render him personally liable to a fellow employee. The summary judgment dismissing the complaint as to Flashinski was proper and is approved.

The argument that Laurence Niederhofer had also become a coemployee is much more tenuous. There is a factual dispute concerning the extent of Niederhofer's

involvement in the design and installation of the system, but even if all the disputed facts are resolved in Laffin's favor, at best all that is demonstrated is a failure to properly supervise. The claim of Laffin is that Niederhofer regularly inspected the system as it was constructed and that he was aware of Laffin's opinions on the inadequacy of some materials being used but failed to take action. Niederhofer was acting as a corporate officer. If he was in some way negligent, it was through failure to properly supervise the design or installation of the system. This was a part of the nondelegable duty of the employer to provide a safe place. At the time of the accident and injury, Niederhofer was neither aware of the malfunction nor that Laffin was trying to correct it. He was not acting as a coemployee. The summary judgment as to Niederhofer was appropriate.

*By the Court.*—Judgment affirmed. ·