Larry A. GERGER, Plaintiff-Appellant-Petitioner,

v.

Arthur A. CAMPBELL, Defendant-Respondent.

Supreme Court

*No. 78–139. Argued September 2, 1980.—*
*Decided September 30, 1980.*

(Also reported in 297 N.W.2d 183.)

For the appellant-petitioner there were briefs by *William A. Denny, James J. Kriva* and *Denny & Yanisch* of Milwaukee, and oral argument by *James J. Kriva*.

For the respondent there was a brief by *James R. Gass, Michael A. Mesirow* and *Kasdorf, Dall, Lewis & Swietlik, S. C.*, of Milwaukee, and oral argument by *James R. Gass.*

HEFFERNAN, J.  The question on this review is whether the Court of Appeals correctly concluded that Arthur A. Campbell, the president of Northern Die and Stamping Corporation (Northern), was acting in his supervisory capacity as president of the corporation and not as a co-employee when he negligently designed and installed a modification to a hydraulic press, the subsequent operation of which resulted in an injury to the plaintiff, Larry A. Gerger.  We conclude that Campbell, in executing a corporate decision to modify the press and as part of the supervisory responsibility of his employer to furnish tools for an employee, was immunized from personal suit and that the plaintiff was left to the exclusive remedy of worker's compensation.  We affirm the decision of the Court of Appeals, which upheld the judgment of the trial court dismissing Gerger's complaint.

The record shows that Gerger had been employed by Northern Die and Stamping Corporation for a period of two weeks when, on September 20, 1972, he sustained an injury to his left hand when parts of three fingers were pinched off by a hydraulic press.  Gerger received worker's compensation payments.  Subsequently, he commenced an action against Arthur A. Campbell.

The Wisconsin statutes provide that the recovery of compensation is to be the exclusive remedy against the employer. Sec. 102.03(2), Stats.  At the time of injury, as consistently interpreted by this court, sec. 102.29 permitted a third-party action against a co-employee.  Sec. 102.03(2) has since been amended by ch. 195, sec. 2, Laws of 1977.  This amendment eliminates the right to bring a common law action against another employee of

the same employer. However, at the time this action was brought, the statutes allowed the assertion of a common law action against the co-employee, Arthur A. Campbell.

The record reveals that the defendant in this action, Arthur A. Campbell, was the founder of Northern Die and Stamping Corporation, and he ran the business as a sole proprietorship until 1969, when the business was incorporated and he went into semi-retirement. Campbell was president of the corporation, and he retained 85 percent of the stock of the corporation. The balance of the stock was owned by his wife and two sons. The officers of the corporation were Campbell, his wife, daughter, and two sons. After the organization of the company into its corporate form, Campbell retired to live at Conover, Wisconsin, and left the day-to-day operation of the company to his two sons. Campbell received no pay as president of the corporation. For tax-avoidance purposes, at the time of the reorganization, he retained ownership of at least some of the machinery; and in exchange for the lease of this machinery to the corporation, he received monthly rental payments of $450 a month. Although the daily operation was left to his sons, he visited the plant approximately every two months.

Sometime late in 1971, a decision was made to change the mechanical energizing system of the hydraulic press. The trial transcript satisfies us, as it did the Court of Appeals, that the undisputed evidence shows that this decision was a corporate one and not the individual decision of Arthur A. Campbell. In making the changes, Campbell removed a gate guard from the press. This guard was designed to prevent an operator's hand from entering the danger zone when the press closed. As a substitute for the gate guard, the defendant designed and assembled a two-hand, push-button control, which it was thought would keep the operator's hands out of the danger area, because both hands were needed to

push the buttons simultaneously in order to close the press. This new control system was designed and installed by Arthur A. Campbell personally. The amended complaint alleged that Campbell was negligent in manufacturing and installing the new press control, because the press control system allowed the press to close when only one of the buttons was depressed. There was also evidence to show that the new safety control could be circumvented by pressing one of the buttons with a knee, and there was testimony at trial which showed that prior to the accident Gerger was using a knee to actuate the machine and was able, therefore, to have one hand under the press. At the time the accident occurred, Campbell was not on the premises.

The case went to trial; and at the close of evidence, the defendant renewed his motion for a directed verdict asserting, as a matter of law, Campbell was not a co-employee, but that in fact his conduct was that of the employer, against whom the only recourse was the payment of worker's compensation. The defendant's motion for directed verdict was held in abeyance, and the case was allowed to go to the jury.

The jury returned a verdict which found that Campbell was negligent in designing and installing the two-button safety device. The jury, however, found that such negligence was not the cause of Gerger's injury. Following the return of the verdict, the trial court, after argument, ordered judgment on the jury's verdict and also granted the defendant's motion for directed verdict. Judgment specifically provided that the complaint be dismissed on the grounds that "Arthur A. Campbell is immune from liability under the workman's compensation laws of the State of Wisconsin." The plaintiff's action was dismissed. [1]

---

[1] It should be noted that the jury verdict was a nullity, because the granting of the directed verdict, which related back to the

The Court of Appeals affirmed the trial court's dismissal on the ground that, at the time Campbell made the changes in the hydraulic press, he was acting in his capacity as president of Northern and for the benefit of the corporation and was therefore immune from suit. It was held that, even were the factors of liability present which would have made Campbell a co-employee, such liability would only exist when the co-employee's negligent acts were contemporaneous with the injury to the plaintiff; and in this case the record demonstrated that the negligence which caused the defective design of the safety device of the machine preceded the accident by several months. The Court of Appeals rejected Gerger's contention that Campbell, as the lessor and owner, was a third-party entity, acting in a dual capacity, separate and distinct from Northern, the employer, and rejected, for the reasons set forth above, the contention that Campbell was acting as a co-employee at the time of the injury.

On review to this court, Gerger is asserting substantially the same arguments, with additional emphasis on the argument that Campbell was in a dual capacity and, hence, whatever his capacity as an employer might have been in respect to Gerger, additional and separate obligations were imposed upon him. 2A Larson, *Workmen's Compensation Law,* sec. 72.80, p. 14–112, describes the dual-capacity doctrine:

"Under this doctrine, an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer."

time of the defendant's motion, had the effect of taking the case away from the jury and resulted in the trial judge ruling as a matter of law that, under the undisputed facts, there was no cause of action.

For reasons to be discussed later in this opinion, we conclude that the dual-capacity doctrine is not applicable under the present fact situation; and we also conclude that, under the circumstances here, even conceding that Campbell was negligent, such negligence occurred in the course of the nondelegable duties of an employer to furnish reasonably safe tools and equipment to an employee.

The Wisconsin law in regard to the liability of co-employees was well summarized in *Laffin v. Chemical Supply Co.*, 77 Wis.2d 353, 253 N.W.2d 51 (1977). To recapitulate the teachings of *Laffin*, that case and the decisions cited therein point out that, while it is true that an injured employee may maintain an action against an officer or supervisory employee, he cannot do so if the conduct of the officer is in his capacity as a corporate officer or supervisor while acting on behalf of the employer. Only if it can be said that by his conduct he has changed his status from that of a supervisor to that of a co-employee will an action for common law tort lie. Relying upon a series of cases cited therein, we stated in *Laffin* that the duty of an officer to supervise an employee is the duty owed to the employer and not to the fellow employee. If an officer or supervisor in that capacity is negligent, that in itself does not open the way for a common law tort action. It is only where a supervisor who is acting as a co-employee is negligent or increases the risk to an employee that liability will lie. Negligence of the employer *per se* does not permit the maintenance of the action, for it is fundamental in compensation law that, whether an employer is negligent or not, statutory liability under the compensation statutes will follow. Hence, it is clear that the negligence of the employer or supervisor which increases the risk to another employee is not the touchstone of common law liability. The key question is whether that negligence occurred in the pursuance of the obligation owed the employer or whether

that negligence occurred in a different context, that of a co-employee. As *Laffin* points out, it is only when an officer or supervisor breaches a personal duty, as contrasted to a breach of duty owed primarily to the employer, that the policy of the worker's compensation act permits a recovery from the officer or supervisor as the third-party defendant.

We have referred to the duty owed by an officer or supervisor to the legal entity that is the employer as a nondelegable duty. As we said in *Lupovici v. Hunzinger Construction Co.*, 79 Wis.2d 491, 494–95, 255 N.W.2d 590 (1977) :

"If the supervisor is merely acting on behalf of the employer in his capacity as a supervisory employee, a personal action against him may not be maintained. In such circumstances the supervisory employee is the representative of the employer and a double recovery, worker's compensation and tort damages, is not permitted."

In *Kruse v. Schieve*, 61 Wis.2d 421, 213 N.W.2d 64 (1973), we stated that the duty to furnish a safe place of employment was the duty of the employer and that this duty was nondelegable and could not be placed upon a corporate officer or a supervisory co-employee.

The nondelegable nature of this obligation is discussed in *Wasley v. Kosmatka*, 50 Wis.2d 738, 184 N.W. 2d 821 (1971). That case makes it clear that not only is the duty to provide safe working conditions nondelegable, but also that the duty to provide reasonably safe equipment for the execution of employment tasks cannot be delegated to a co-employee.

*Venden v. Meisel*, 2 Wis.2d 253, 85 N.W.2d 766 (1957), upon which *Wasley* is in part based, points out that it is the employer's duty to furnish reasonably safe equipment. This holding is consistent with the common law principle that the duty of an employer to furnish safe

tools and equipment is nondelegable and that responsibility cannot be foisted upon an officer or supervisor who is sought to be held liable as a co-employee.[2]

What we have in the factual posture of this case is a situation where the president of the corporation, as a result of a corporate decision, modified a machine, a tool furnished by the employer, and negligently did so in a manner that made it unsafe. This was a corporate decision undertaken in the course of the employer's nondelegable duty to furnish equipment and machinery to be

[2] At common law, an employer had a duty to provide, in addition to a reasonably safe place to work, "safe appliances, tools, and equipment . . . ." 1 Larson, *Workmen's Compensation Law*, sec. 4.40, at 28 (1978); *see also*, Commons and Andrews, *Principles of Labor Legislation* 358 (1916).

Wisconsin enacted both workmen's compensation and the safe place statute in 1911. *See*, ch. 50, Laws of 1911 (workmen's compensation, presently codified at ch. 102, Stats.); ch. 485, Laws of 1911 (Safe Place Statute, presently codified at sec. 101.11, Stats.). Both laws include a focus on employer liability for the safety of equipment and machinery. *See, e.g.*, Wisconsin Bureau of Labor and Industrial Statistics, Thirteenth Biennial Report (1907–08), *reproduced* in Auerbach, Garrison, Hurst, and Mermin, *The Legal Process* 585 (1961) (one aim of proposed worker's compensation legislation is to compel employers "to provide safe appliances and ways"); *Northwestern Casualty & Surety Co. v. Industrial Comm.*, 194 Wis. 337, 216 N.W. 485 (1927) (unsafe equipment—imposed liability on employer under both worker's compensation and safe place statute).

This court has stated that the employer's duty to provide and maintain safe equipment and a safe employment environment are nondelegable; a supervisor or corporate officer owes the duty's execution to the employer on the latter's behalf, not to other employees. *Crawford v. Dickman*, 72 Wis.2d 151, 154, 240 N.W.2d 165 (1976). This view comports with both the common law and statutory treatment of workplace accidents. *See also*, Boden, *The Problem of Indemnity Under the Safe Place Statute*, 40 Marq. L. Rev. 349, 354 (1957) (describing nondelegability of employer's duty under safe place statute); *Kottis v. United States Steel Corp.*, 543 F.2d 22, 26 (7th Cir. 1976).

used by the employee. This was corporate negligence, not co-employee negligence; and it does not differ in any legally significant manner from any other negligence perpetrated by the employer, against whom the only remedy is worker's compensation. Here there was no doffing of the hat of an officer or supervisory employee of the corporation and the donning of the hat of a co-employee. Everything that Campbell did was as a consequence of his function in the discharge of his duties to his employer, the corporation. It did not constitute the negligence of a co-employee, even though his affirmative acts increased the risk to a corporate employee who subsequently used the machine. *See, Crawford v. Dickman,* 72 Wis. 2d 151, 154, 240 N.W.2d 165 (1976). There was no departure from the corporate and supervisory function to that of the function of a co-employee.

This situation differs markedly from the typical co-employee situation, such as in *Pitrowski v. Taylor,* 55 Wis.2d 615, 201 N.W.2d 52 (1972), where the company president was engaged in loading a truck. The accident there was caused by the negligence of an officer who was acting as a co-employee in the loading process. We pointed out in *Laffin, supra,* that a direct involvement in that capacity created a duty to the injured employee separate and distinct from the duty the officer owed to the employer company. It is apparent that the supervisory employee's negligence in *Pitrowski* is not similar to the negligence of Campbell in improperly designing a machine for the employer. Rather, the allegation in *Pitrowski* was that the conduct in the nonsupervisory capacity toward the injured workman was negligence as a co-employee; and we held that, in that circumstance, a jury, upon remand and upon the finding of the requisite facts, could impose third-party liability.

The Court of Appeals concluded that there was no liability imposed upon Campbell because the negligence

of Campbell was not contemporaneous with the injury but occurred at a substantially earlier time. Because we find that Campbell was acting in a nondelegable function for the employer, we are not confronted with the question of whether a true co-employee's negligence must be contemporaneous with the injury. Suffice it to say that our prior cases have not so held, and we cannot conclude that the negligence must be contemporaneous. We see no reason why an injured employee should not have the right to recover against a co-employee for noncontemporaneous negligence if that negligence were truly that of a co-employee and not that of a supervisor. The question is not one of contemporaneousness but of proximate cause.

On the principal issue which we find dispositive of this case, we therefore conclude that Campbell was an officer of the corporation, his negligence occurred in the execution of the duty he owed to the employer corporation, and the breach of that duty, although arguably the cause of Gerger's injury, was covered by the worker's compensation schedules and did not constitute common law negligence of a co-employee.

Additionally, Gerger argues that Campbell should be personally liable in his dual capacity as the owner and lessor of the equipment. Even conceding *arguendo* that Campbell might be shielded from tort liability because what he did in modifying the machine was a part of his function as an employer, nevertheless the plaintiff contends there is liability upon Campbell because, in addition to his function as an officer of the corporation, he was the owner of the press and leased it to the corporation.

This court has not had reason heretofore to consider the dual-capacity doctrine, and we think it inapplicable under the present facts. Whatever the status of Camp-

bell might have been had he furnished a dangerously defective piece of equipment which resulted in the injury to Gerger, that is not what happened here. There is no claim that Campbell, as the lessor of the machinery, initially furnished a dangerous machine. All the record shows is that the safe machine was made unsafe when Campbell, acting not as the owner of the equipment or as the lessor, but as the employer, negligently modified the machine. The decision to modify the machine was a corporate one; and, in physically making the modifications, Campbell acted in the discharge of his duties to the employer. The crucial fact here had nothing to do with whether Northern owned the machinery or whether Campbell did. The crucial fact was that Campbell, as the officer of the corporation, in respect to the obligations he had to his corporate employer, modified the machine. Under such circumstances the dual-capacity test is not implicated. The function which Campbell performed negligently was directly related to the duty of the employer to furnish equipment and machinery for the employee. It had no functional relationship whatsoever with whether Campbell was the owner and lessor of the equipment. We do not conclude that the dual-capacity doctrine may not appropriately circumvent the immunity under the exclusive-remedy test in a proper case, but this is not such a case.

The case which is frequently cited as illustrative of the dual-capacity doctrine is the California case of *Duprey v. Shane*, 39 Cal.2d 781, 249 P.2d 8 (1952). In that case a chiropractor's assistant was treated by the chiropractor, who negligently aggravated an injury. In that case the employer was found to be not in his role as an employer but had rather donned the cap of a treating doctor and was thus vulnerable to a common law suit. This is a far cry from the situation here. While ownership, in some cases, may give rise to a dual capacity, bare owner-

ship in this case cannot, because the causative element in regard to Gerger's injury arose from modifications not by the owner but by the president of the employer, who was acting in that capacity alone.

While we do not rely totally upon its reasoning, *Rosales v. Verson Allsteel Press Co.*, 41 Ill. App.3d 787, 354 N.E.2d 553 (1976), held that a manufacturer of automobile seats was not liable in its dual capacity as a quasi-manufacturer of a punch press. The court held that the plaintiff's argument asserting liability:

". . . ignores the reality that an employee suing the one who employs him is suing his employer—a fact not changed because the employer performs more than one work-related function. Defendant's primary function is the manufacture of automobile car seats; it also performs the function of supplying its employees with the tools to perform their parts in the primary function. The supplying of tools is a natural incident of the employer-employee relationship. Plaintiff's argument that this gives rise to a dual capacity is unpersuasive. The modification of the safety control on the punch press does not impose on the defendant manufacturer of automobile car seats the dual capacity of 'quasi manufacturer' of punch presses. The defendant does not sell punch presses. It only provides them for employees. This is an incident of the employment relationship. Further, even under the dual capacity doctrine, the second capacity must be one that creates legal obligations on the part of the employer to the public in general and not just to its employees. 'The decisive dual-capacity test is not concerned with how separate or different the second function of the employer is from the first but with whether the second function generates obligations unrelated to those flowing from the first, that of employer.' (2A A. Larson, Workmen's Compensation sec. 72.80 (1975).)" (Pp. 789–90)

The facts of *Rosales* are strikingly similar to those before us. However, in determining the instant case, we reject liability under the dual-capacity doctrine for the same reason that we reject liability under the co-em-

ployee theory. The negligence was not committed by a co-employee, nor was it committed by one in a separate capacity. The negligence under either theory was that of an officer of the corporation acting as the alter ego of the corporation in carrying out the nondelegable duties of the employer.

*By the Court.*—Decision affirmed.