Leon LOVE and James Pickett,
Plaintiffs-Appellants,

v.

FLOUR MILLS OF AMERICA, a Delaware Corporation; and Chickasha Cotton Oil Company, a Delaware Corporation, Defendants-Appellees,

and

Houston General Insurance Company,
Defendant-Appellee.

Fred DONALDSON, Plaintiff-Appellant,

v.

FLOUR MILLS OF AMERICA, INC.,
Defendant-Appellee.

Nos. 79–2277, 80–1362 and 80–1237.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 18, 1980 in
Nos. 79–2277 and 80–1362.

Submitted Nov. 18, 1980 in No. 80–1237.

Decided May 8, 1981.

Larry A. Tawwater, Oklahoma City, Okl., for plaintiffs-appellants Leon Love and James Pickett.

Don Manners of Manners, Cathcart & Lawter, Oklahoma City, Okl., for plaintiff-appellant Fred Donaldson.

Larry D. Ottaway of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for defendants-appellees Flour Mills of America and Chickasha Cotton Oil Co.

Glen Mullins, Oklahoma City, Okl. (Dale Reneau of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., with him on brief), for defendant-appellee Houston General Insurance Co.

Before McWILLIAMS, BREITENSTEIN and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

These separate diversity actions stem from a single tragic accident at a grain elevator in Durant, Oklahoma. Because common issues are raised in the appeals, we consolidated the cases and treat all arguments in a single opinion. The principal issues for our determination are (1) whether allegations of gross, willful, and wanton negligence on the part of an employer are sufficient to avoid the exclusive jurisdiction of the Oklahoma Workers' Compensation Act; (2) whether an employer's insurance carrier, providing workers' compensation, general liability, and fire insurance, accused of negligent inspection or failure to inspect and warn, is entitled to claim the employer's immunity from a common law action; and (3) whether a parent corporation is immune from common law suit brought by a subsidiary corporation's injured employee alleging negligence on the part of the parent.

On November 30, 1977, plaintiffs Leon Love, James Pickett, and Fred Donaldson, employees of a grain elevator owned and operated by Flour Mills of America, Inc. (Flour Mills),[1] were seriously injured when a series of dust explosions and fires destroyed the elevator. Love and Pickett jointly filed a civil action in the Western District of Oklahoma against Flour Mills and its parent corporation Chickasha Cotton Oil Company (Chickasha), alleging gross, wanton, and willful negligence in the maintenance and operation of the elevator. Donaldson filed a similar complaint against Flour Mills in the District Court for the Eastern District of Oklahoma, alleging gross, willful, and wanton negligence in failing to provide a safe place for Donaldson to work and in failing to warn him of the dangers present in the mill. Love and Pickett filed a separate complaint against Houston General Insurance Company in the District Court for the Western District of Oklahoma. They alleged that Houston General was the fire and allied perils insurer of the premises at Durant and that it had a duty to inspect the premises, to recognize and discover hazards and to see that they were corrected. They claim Houston General breached this duty and is liable to plaintiffs for their injuries. The respective courts sustained all defendants' motions to dismiss, declaring that exclusive jurisdiction over the claims asserted was vested in the Oklahoma Workers' Compensation Court. These appeals followed.

---

1. The complaint asserts that plaintiffs were employed by the Durant Milling Company owned by Flour Mills of America, Inc. and Chickasha Cotton Oil Company. The action was dismissed on a Fed.R.Civ.P. 12(b)(6) motion. No finding was ever made as to actual ownership, but from other record materials and the briefs it appears Durant Milling Company is not a separate corporation; rather it is a part of Flour Mills, which in turn is a subsidiary of Chickasha.

*Liability of Immediate Employer*

■ We recently confronted arguments similar to those asserted here against Flour Mills in *Arrington v. Michigan-Wisconsin Pipeline Co.*, 632 F.2d 867 (10th Cir. 1980). In that case injured workers and representatives of deceased workers brought common law actions against Michigan-Wisconsin, alleging willful and wanton negligence in failing to prevent a fatal explosion and fire in a pipeline ditch in Oklahoma. After analysis of many decisions we held that the Oklahoma Workers' Compensation Act bars all common law negligence actions against the principal employer. As to the allegations of willful and wanton conduct we said,

> "We may read the complaints as claiming, by the acerbic adjectives and adverbs used, the highest possible degree of negligence; nevertheless, it is still negligence that is alleged. Mere allegations of willfulness are not sufficient to take cases out of the Compensation Act. 'The liberal use of the phrase "wilfully and knowingly" in the petition added nothing to the facts .... Such constituted a mere characterization of the acts or omissions of the defendants concerned.' *Roberts v. Barclay*, 369 P.2d 808, 810 (Okl.1962)."

632 F.2d at 871.

In his authoritative treatise on workers' compensation law, Professor Larson states,

> "[s]ince the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute,

or other misconduct of the employer short of genuine intentional injury.

> "Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injury that robs the injury of accidental character.

> . . . .

> "If these decisions seem rather strict, one must remind oneself that what is being tested here is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of intentional versus accidental quality of the precise event producing injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin."

2A Larson, Workmen's Compensation Law ¶ 68.13 (1976).

■ We also reject plaintiffs' claim that employees as a class are denied equal protection under section 11 of the Workers' Compensation Act. Plaintiffs contend any interpretation of section 11 that denies compensation benefits to employees who wilfully violate safety standards[2] while allowing employers who engage in similar willful conduct to retain the benefits of immunity under the Act, promotes discrimination that

---

2. Okl.Stat.Ann. tit. 85, § 11 (West Supp. 1980) provides, in part, as follows.

"Every employer subject to the provisions of the Workers' Compensation Act shall pay, or provide as required by the Workers' Compensation Act, compensation according to the schedules of the Workers' Compensation Act for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment, without regard to fault as a cause of such injury, and

in the event of disability only, except where the injury is occasioned by the willful intention of the injured employee to bring about injury to himself or of another, or where the injury results directly from the willful failure of the injured employee to use a guard or protection against accident furnished for his use pursuant to any statute or by order of the Commissioner of Labor, or results directly from the intoxication or drug or chemical abuse of the injured employee while on duty."

bears no rational relationship to the objective of promoting safety in the workplace. But we believe the correct interpretation of section 11 is not subject to this infirmity. We read this section to equitably deny benefits to employees who intentionally or willfully injure themselves, yet provide recovery for other injuries sustained by employees, regardless of the employer's fault.

### Liability of Insurer

■ The cause against Houston General was dismissed without determining what kinds of insurance were involved or whether Houston General had in fact inspected the elevator at Durant. Houston General admits in its brief that it was the workers' compensation carrier and provided coverage for general liability and fire perils. The Oklahoma Supreme Court has held the intent of the workers' compensation law "is to make the insurance carrier one and the same as the employer as to liability and immunity." *United States Fidelity and Guar. Co. v. Theus*, 493 P.2d 433, 435 (Okl. 1972). In that case the insurer carried both workers' compensation and general liability insurance on the employer, and the court made no distinction based upon the existence of the liability policy. That decision and *Maryland Cas. Co. v. Hankins*, 532 P.2d 426, 429 (Okl.1975), convinces us that Oklahoma does not recognize—under either contract or tort principles—a common law cause of action by an injured worker directly against an employer's insurer for negligent inspection or failure to inspect.

### Liability of Owner (Parent) Company

■ The Love and Pickett complaint against Chickasha asserts simply that Chickasha, with Flour Mills, "owned" the elevator, and that the "injuries were the result of the negligence of the defendants in the maintenance of the Durant Milling Company." Chickasha complains that its liability as an entity separate and distinct from the immediate employer, Flour Mills, was not argued in the trial court and was raised for the first time on appeal. Since the case was dismissed on the pleadings without de-

velopment of the facts, we must consider all reasonable inferences from the pleadings in reviewing the propriety of the dismissal. Thus, we must read the complaint as charging Chickasha with independent negligence.

Love and Pickett contend Chickasha is not the immediate employer and is therefore not entitled to immunity under Okl. Stat.Ann. tit. 85, § 12 (West 1970), which provides, "[t]he liability prescribed in [section 11] shall be exclusive and in place of all other liability of the *employer and any of his employees*, at common law or otherwise." (Emphasis added.) Plaintiffs rely principally upon *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir.), *cert. denied*, 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979), which involved a fatal methane gas explosion in a Kentucky coal mine owned and operated by a wholly owned subsidiary of Blue Diamond Coal Company. The Sixth Circuit ruled that the parent corporation, Blue Diamond, was neither an "employer" nor a "contractor" under the Kentucky Workmen's Compensation Act and therefore was not immune from tort liability by virtue of the Act. It reasoned that "the tort system should not deny recovery in an increasingly concentrated economy to an injured employee due to the fortuitous circumstance that the tortfeasor is not a stranger but is controlled by the same business enterprise that controls his immediate employer." *Id.* at 662.

An examination of *Boggs*, however, reveals a much narrower holding than plaintiffs ascribe to it. The Sixth Circuit pointed out that Blue Diamond, which had primary responsibility for mine safety functions and recognized the necessity of improvements in mine ventilation, nevertheless authorized removal of existing ventilation and other safety devices in order to open a new tunnel. The changes, which increased the level of methane gas in the mine, apparently were concealed from federal mine inspectors who would have taken immediate steps to correct the dangerous condition. Emphasizing principles of state corporation law, the court stated it refused to disregard the separate corporate exist-

ence of the parent and subsidiary and held that Blue Diamond was not immune as an employer under the state workers' compensation law from common law tort liability for its independent acts of negligence.

Plaintiffs base their entire argument in the instant case on the Sixth Circuit statements in *Boggs* that corporation law does not allow a parent corporation to pierce its own corporate veil in order to claim immunity as the alter ego of its wholly owned subsidiary. *Id.* at 662. But the finding of separate and distinct corporate personalities merely answers the threshold inquiry whether the parent is in fact a statutory employer of the injured employee or whether it is a "third party" or "stranger" subject to common law tort liability. Although at least one jurisdiction has held that a parent corporation is the statutory employer for workers' compensation purposes when its subsidiary's only existence is that of an operating division of the parent, *see Coco v. Winston, Ind., Inc.*, 330 So.2d 649 (La.App. 1975), *rev'd on other grounds*, 341 So.2d 332 (1976), most jurisdictions subscribe to the reasoning in *Boggs* that, having assumed a separate and independent corporate status, a parent corporation will not be permitted to avoid the consequences of its separate corporate identity to claim immunity as an alter ego employer of its subsidiary's injured employees. We have found no cases to persuade us, based upon the record before us, that the separate corporate personalities assumed by Chickasha and Flour Mills may be disregarded. Accordingly, we hold that under Oklahoma law Chickasha would not be considered plaintiffs' employer for purposes of immunity under the Act.

That does not end our inquiry, however. If we treat Chickasha as simply a shareholder of Flour Mills, albeit a 100% shareholder, we see at once it should not be able to claim immunity for an independent tort that has nothing to do with the management of Flour Mills. Thus, if a Chickasha driver negligently injured a Flour Mills employee on an errand for Chickasha, Chickasha would be subject to common law tort liability. *See Latham v. Technar, Inc.*, 390 F.Supp. 1031 (E.D.Tenn.1974) (workman of subsidiary, temporarily assigned to work in facilities controlled by parent, fatally injured by independent negligent acts of parent's employees); *Foley v. New York City Omnibus Corp.*, 112 N.Y.S.2d 217 (1952) (employee of subsidiary on garage premises owned, operated, and maintained by parent injured when floor collapsed). *Cf. Belen v. Dawson*, 52 Mich.App. 670, 217 N.W.2d 910 (1974) (employee of one company injured in automobile owned by a sister company).

The cases also recognize, however, that when a tortfeasor acts in a representative capacity, even though he or she may be a controlling shareholder of the employer of the injured party, there is no independent tort liability for the act or omission. In *Laffin v. Chemical Supply Co.*, 77 Wis.2d 353, 253 N.W.2d 51 (1977), the president of the corporation and the plant supervisor were held immune from common law suit brought by an injured employee whose injuries were allegedly caused by the defendants' negligent design and operation of a sulfuric acid dispensing system. The court held that "[w]hen an officer or supervisor fails to perform the *employer's duty*, the failure is that of the employer, not the officer or supervisor." 253 N.W.2d at 53 (emphasis added). In *Steele v. Eaton*, 130 Vt. 1, 285 A.2d 749 (1971), the president and principal stockholder of the employer corporation was held immune from suit at common law, the alleged liability—a breach of a duty coincident with the employer's general duty of care—being only derivative rather than an independent negligent act of the president. The same principle was applied in *Chambers v. Gibson*, 145 Ga.App. 27, 243 S.E.2d 309 (1978), and *Kruse v. Schieve*, 61 Wis.2d 421, 213 N.W.2d 64 (1973). *See also Williams v. McAllister Bros., Inc.*, 534 F.2d 19 (2d Cir. 1976); *Goldberg v. Context Industries, Inc.*, 362 So.2d 974 (Fla.App.1978); *Mier v. Staley*, 28 Ill.App.3d 373, 329 N.E.2d 1 (1975) (directors acting in representative capacity immune from suit under compensation act).

The instant case is not one involving an independent act of negligence by Chickasha unconnected with the management of Flour

Mills. It is clear from the briefs and record that Chickasha's alleged negligent maintenance of the elevator is founded upon the fact that Chickasha owns other grain elevators or companies operating similar mills. Based on this experience, plaintiffs argue, Chickasha should have recognized the hazardous conditions at the Durant facility and should have caused Flour Mills to operate the facility in a safer manner. If such an assertion were held sufficient to sustain a common law action, it places upon shareholders an independent duty, which in reality is the nondelegable duty of the employer, to provide a safe working environment for corporate employees. Such a holding would have the anomalous effect of treating shareholders as employers and then refusing to grant them employer immunity under the Workers' Compensation Act. Following the *Boggs* analysis of corporate law, shareholders do not have independent powers to manage the company; they manage only through the directors they elect. When the only negligence alleged against the shareholder owner of a corporation is failure to see that directors take appropriate safety measures, the same policy that frees directors and officers from personal tort liability to workers injured on the job is necessarily applicable to shareholders.

In *Neal v. Oliver*, 246 Ark. 377, 438 S.W.2d 313 (1969), the Supreme Court of Arkansas held that although Oliver, the sole stockholder and manager of a laundry and dry-cleaning corporation, was not a statutory employer, he was nevertheless exempt from common law liability under the state's compensation act because his alleged negligence in allowing a dangerous machine to be operated by his employee could only be characterized as a breach of an employer's general duty to provide safe machinery; the injury was not caused by a direct independent negligent act of Oliver. The court reasoned that Oliver, in his individual capacity, "had no duty to furnish a place for appellant to work—safe or otherwise." *Id.* 438 S.W.2d at 319. We think the Oklahoma Supreme Court would agree.

Since the only tort alleged against Chickasha is that it failed to perform the em-

ployer's duty or to require the employer to perform its duty, the trial court properly dismissed the action.

AFFIRMED.