Estella M. MILLER, Duane R. Miller, Tara Lynn Miller, a minor, by her Guardian ad Litem, Kenneth R. Baumgartner, and Carl Robert Miller, a minor, by his Guardian ad Litem, Kenneth R. Baumgartner, Plaintiffs-Appellants-Cross Respondents,

v.

BRISTOL-MYERS COMPANY, a foreign corporation, Defendant-Respondent,†

FIKE CORPORATION, a foreign corporation, and Interstate, Inc., a Wisconsin corporation, Defendants-Co-Appellants,

BUKACEK CONSTRUCTION, INC., a Wisconsin corporation, and General Casualty Company of Wisconsin, a Wisconsin insurance corporation, Defendants,

KAELBER COMPANY, a Wisconsin corporation, and Sentry Insurance a mutual company, a Wisconsin insurance corporation, Defendants-Co-Appellants,

ARCHITECTURAL ASSOCIATES, LTD. OF WISCONSIN, a Wisconsin corporation, Homestead Insurance Company, a Wisconsin insurance corporation, Scottsdale Insurance Company, a foreign insurance corporation, and Columbia Casualty Company, a foreign insurance corporation, Defendants,

OEHCS, INC., a foreign corporation, Robert C. Brandys and Crum & Forster Insurance Companies, an insurance corporation, Defendants-Respondents-Cross Appellants,

---

† Petition to review filed.

*See Callaghan's Wisconsin Digest, same topic and section number.

Joseph R. KLEIN, The Klein Company, a Wisconsin corporation, Frank B. Hall & Co., a foreign corporation, and Factory Mutual Engineering Associates, Defendants.

Court of Appeals

*No. 90-1612. Submitted on briefs January 24, 1991.—Decided March 6, 1991.*

(Also reported in 468 N.W.2d 744.)

685

On behalf of the plaintiffs-appellants-cross respondents, the cause was submitted on the briefs of *Kenneth R. Baumgartner* of Kenosha.

On behalf of the co-appellants, the cause was submitted on the briefs of *Robert E. Hankel* of *Paulson, Hankel, Bruner & Nichols, S.C.* of Racine; *Robert F. Johnson* and *Michele M. Ford* of *Cook & Franke, S.C.* of Milwaukee; and *Joseph D. McDevitt* and *Barbara A. O'Brien* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James R. Clark* and *Kevin P. Whaley* of *Foley & Lardner* of Milwaukee.

On behalf of the defendants-respondents-cross appellants, the cause was submitted on the brief of *Michael Ash, Michael B. Apfeld,* and *Mark J. Backe* of *Godfrey & Kahn, S.C.* of Milwaukee.

Before Nettesheim, P.J., Scott and Anderson, JJ.

ANDERSON, J. Estella M. Miller and others appeal from a summary judgment dismissing Bristol-Myers Company from a personal injury action resulting from injuries Miller sustained while employed at Medical Engineering Corporation (MEC). MEC is a wholly-owned subsidiary of Bristol-Myers. The trial court dismissed Bristol-Myers under the worker's compensation immunity provision. Section 102.03(2), Stats. The trial court also dismissed all cross-claims against Bristol-Myers. We reverse the judgment of the trial court and remand for further proceedings.

## I.

MEC has a material preparation room in which highly flammable chemicals, including toluene, are used to clean aluminum molds used for the production of breast implants. Construction of a new preparation room began in late 1985. After completion of the new preparation room, Miller was injured in a fire. Toluene ignited when she poured the excess toluene from the molds into a storage container. She received third-degree burns to her face, hands and other parts of her body. It is the events that led to the construction of the new preparation room that give rise to the issue in this case.

It is necessary to set forth the relationship between the corporations involved. Bristol-Myers is the sole shareholder of MEC. Bristol-Myers maintains, and the parties do not dispute, that MEC and Bristol-Myers are separate legal entities. MEC officers and managers are charged with the management of MEC. MEC's board of directors consists of the president of Bristol-Myers' health group, the president of Zimmer, Inc. (a wholly-owned subsidiary of Bristol-Myers) and the president of MEC.

Bristol-Myers exercises "line authority" over its corporate subsidiaries. For example, MEC's president reports to the president of Zimmer, who reports to the president of Bristol-Myers' health group, who ultimately reports to Bristol-Myers' board of directors. This allows Bristol-Myers to "monitor the performance of MEC." In interrogatories, Bristol-Myers stated that "line authority" gives it "the legal right or power to ultimately affect changes in safety-related matters or other day-to-day operations."

Bristol-Myers' policy requires that large capital expenditures of its subsidiaries be approved by the general finance committee of Bristol-Myers' board of directors. Intermediate capital expenditures require approval of Bristol-Myers' health group president. The "smallest level of capital expenditures" are left to the subsidiaries' approval. Bristol-Myers' technical evaluation department conducts announced and unannounced occupational health and safety audits of its subsidiaries. The results are reported to the subsidiaries.

Bristol-Myers claims that it did not design or construct the preparation room where Miller was injured. It claims that its involvement was only from its supervision and management of MEC. Bristol-Myers claims that its insurance broker inspected MEC and recom-

mended that a new preparation room be constructed. The recommendation was made to Bristol-Myers' insurance safety department, and then Bristol-Myers forwarded it to MEC. Subsequently, a member of the technical evaluation department conducted an evaluation of MEC. Bristol-Myers claims that the results were reported to MEC and that no specific recommendations were made to MEC on how MEC should respond.

Bristol-Myers further claims that MEC then hired an independent safety consultant, Robert Brandys, to provide advice concerning the preparation room. After receiving the advice, MEC decided to construct a new preparation room and submitted the appropriate capital appropriation request to Bristol-Myers. The request was reviewed by a financial analyst of Bristol-Myers and approved by the president of Bristol-Myers' health care group. Bristol-Myers claims that its role was limited to reviewing the financial implications of the changes and providing MEC with general information regarding safety and insurance requirements for flammable materials. Bristol-Myers claims that it did not conceal any information, or direct MEC to take any specific actions in regard to the preparation room.

Miller claims that Bristol-Myers did everything that it admits, but that it was more actively involved than supervising and approving the plans for financial implications of the new preparation room. Miller alleges that both Bristol-Myers' technical evaluation department and insurance safety department conducted inspections of the preparation room and recommended to MEC that a new room be constructed. Miller alleges that Anthony Durso, of Zimmer, hired Brandys to accompany Durso to MEC for a safety evaluation and then to prepare a safety report. Miller claims that MEC did not hire Brandys. Miller alleges that Brandys' report went to both Durso

689

and to MEC. Durso sent a report to MEC in which he did make recommendations on how to respond to the safety evaluation.

In Brandys' deposition, he testified that he informed Durso that the room was in "serious shape" and that bonding wires, static grounding mats and cotton smocks should be used to reduce the chance of fire. He testified that a preliminary report was written and sent to Durso. Durso then contacted Brandys and stated that Brandys was recommending "a Cadillac rather than a Chevy." Brandys testified that Durso told him to limit his recommendations to those that were required by federal regulations. Brandys testified that Durso told him that "regowning everyone at the factory [with cotton or other materials] would be too expensive." Durso also sent MEC a report after Durso's inspection of MEC.

Miller alleges that MEC constructed the preparation room according to the approved plan and according to the recommendations of Bristol-Myers' technical evaluation department, Durso and Brandys.

Brandys testified that a spark ignited the toluene which caused the fire that burned Miller. The spark could be traced to the lack of wires to bond the pouring and receiving receptacles, the lack of static grounding mats and the wearing of a nylon smock. Brandys testified that these precautions were the precautions Durso told him not to include in the safety report to MEC.

Miller alleged that Bristol-Myers directed and instructed MEC to construct the room, that it designated certain specifications, and that it approved the plans for the room. Miller also alleged that Bristol-Myers negligently failed to properly advise MEC with respect to the manner in which the employees could safely work. Miller alleged that Bristol-Myers' negligence was a direct and proximate cause of Miller's injuries.

Bristol-Myers answered by claiming that as MEC's sole shareholder, it merely consulted with MEC in regard to the construction of the material preparation room.

## II.

When reviewing motions for summary judgment, we apply the standards set forth in sec. 802.08(2), Stats., in the same manner as the trial court. *Employers Health Ins. v. General Casualty Co.,* 154 Wis. 2d 696, 699-700, 454 N.W.2d 10, 11 (Ct. App. 1990). Summary judgment is appropriate where there are no material issues of fact and the moving party is entitled to judgment as a matter of law. *Id.*

### A. MILLER'S and CO-APPELLANTS' APPEAL

Bristol-Myers moved for summary judgment on the grounds that, *inter alia,* the alleged acts were committed solely in its representative capacity as shareholder of MEC, and the acts were those of an employer subject to the immunity provided by the worker's compensation act. Section 102.03(2), Stats.[1] The trial court held that because Bristol-Myers acted within its managerial power to supervise the safety of the subsidiary's new preparation room, it was an "employer" within the meaning of sec. 102.03(2) and entitled to immunity. Therefore, the trial court concluded that further factual findings were unnecessary. Summary judgment was granted in favor of Bristol-Myers.

---

[1]The relevant portion of sec. 102.03(2), Stats., reads:

**(2)** Where such conditions exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employe of the same employer and the worker's compensation insurance carrier . . ..

On appeal, the parties do not argue that "employer" in sec. 102.03(2), Stats., should be interpreted to include Bristol-Myers. Neither party disputes that Bristol-Myers is a separate and distinct legal entity and that MEC is Miller's employer. Instead, Miller argues that Bristol-Myers, as a third party, assumed a duty of ordinary care when it supervised and approved the plans for the new preparation room. Bristol-Myers argues that its actions were pursuant to the parent corporation's normal management and supervisory activities of its subsidiary, and thus, the management decisions are attributable to MEC and entitled to the same protection provided to MEC under the immunity provision of the worker's compensation act. Bristol-Myers also argues that the actions it took are insufficient as a matter of law to conclude that it assumed an independent duty of reasonable care to Miller.

Bristol-Myers relies on *Gerger v. Campbell,* 98 Wis. 2d 282, 297 N.W.2d 183 (1980), and *Laffin v. Chemical Supply Co.,* 77 Wis. 2d 353, 253 N.W.2d 51 (1977). These cases establish the "representative capacity" analysis. Under this analysis, an officer or supervisor of the employer, whose actions are undertaken as a representative of the employer, is immune under sec. 102.03(2), Stats., from a suit by an employee.

The rationale underlying the representative capacity analysis is that the duty of providing a safe work environment is the duty of the employer. *Laffin,* 77 Wis. 2d at 358, 253 N.W.2d at 53. This duty cannot be delegated to corporate officers. *Id.* Therefore, the duty of the officer to supervise an employee is the duty owed to the employer, not to a fellow employee. *Id.* at 359, 253 N.W.2d at 53. If there is a failure of an officer or employee to perform a duty owed to the employer, the

692

employee's recourse is solely against the employer. *Id.* at 358, 253 N.W.2d at 53. Thus, in order for the representative capacity analysis to apply, the supervisor or officer must owe a duty of proper supervision to the employer. *See id.* at 358–59, 253 N.W.2d at 53.

Bristol-Myers does not owe a duty to MEC to supervise or approve of MEC's preparation room. First, Bristol-Myers, as a separate and distinct entity, is not Miller's employer. MEC cannot delegate its duty to provide a safe working environment to Bristol-Myers.

Second, Bristol-Myers' status as a sole shareholder does not create a duty to MEC to manage and supervise the corporation such that its actions are attributable to MEC. Shareholders do not have independent powers to manage the company; they manage only through the directors they elect. *Love v. Flour Mills of America,* 647 F.2d 1058, 1063 (10th Cir. 1981); *see also* 5 C. Keating & J. Reinholtz, *Fletcher Cyclopedia of the Law of Private Corporations* sec. 2097, at 501–02 (rev. perm. ed. 1987) (stating that shareholders have few managerial powers). For example, Wisconsin law clearly vests the conduct of a domestic corporation's business and affairs in the board of directors. Section 180.0801, Stats.[2] Powers vested in the board of directors cannot be exercised by the shareholders. *Fletcher,* sec. 2097, at 502.

Bristol-Myers does not cite, and we are unable to find, any authority that gives sole shareholders the power to supervise, consult and approve the plans of the

---

[2]The current business corporation law became effective January 1, 1991. Section 88, 1989 Wis. Act 303. The old statutes contain similar corporation principles. *See* secs. 180.30 and 180.40, Stats. (1987–88).

corporation's work environment. The supervision and approval of MEC's preparation room was within the management duty of the directors of MEC, and Bristol-Myers did not have a duty to MEC, by virtue of its status as sole shareholder, to participate in the supervision and approval of MEC's preparation room. Bristol-Myers cannot have acted in a representative capacity of MEC and, therefore, cannot maintain that it is immune under the worker's compensation act. We conclude that a parent corporation can be sued as a third party under the worker's compensation act by the employee of a subsidiary when the parent corporation acts in a manner other than as a shareholder.

An employee's action against a corporation's sole shareholder does not offend public policy in this case. The legislature has shielded shareholders from liability for acts of the corporation. Section 180.0622(2)(a), Stats. However, shareholder immunity is limited. The legislature has not granted immunity for acts other than as a shareholder. *See id.* The allegations in this case do not involve liability for MEC's acts, but liability for Bristol-Myers' acts. Miller alleges affirmative acts by Bristol-Myers of supervision and approval of the plans.

Public policy would be offended if Bristol-Myers' management of MEC were immune under sec. 102.03(2), Stats. Shareholders and the corporation are treated separately under all ordinary circumstances. *Jonas v. State,* 19 Wis. 2d 638, 644, 121 N.W.2d 235, 238 (1963). The benefit of the separateness is to shield the parent corporation from contractual and tort liabilities of the subsidiary. However, Bristol-Myers is requesting that their management of MEC be considered "employer" decisions subject to the immunity provided to their subsidiary. Those who create the corporation in order to enjoy

694

the advantages flowing from its existence as a separate entity cannot ask that such existence be disregarded where it works to disadvantage them. *See id.* at 644, 121 N.W.2d at 239. Accepting such conflicting positions is not good policy. *See id.*

Bristol-Myers did not have a duty to MEC to supervise and approve MEC's new preparation room. But one who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person is subject to liability to the third person for injury resulting from the failure to exercise reasonable care. *American Mut. Liab. Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 48 Wis. 2d 305, 313, 179 N.W.2d 864, 868 (1970). This rule applies if the party's failure to exercise reasonable care increases the risk of such harm or if the party had undertaken to perform a duty owed by the other to the third person. *Id.* When either situation occurs, the parent corporation may be sued as a third party under the worker's compensation act. Section 102.29(1), Stats.

There is a genuine issue of material fact as to the extent of the actions Bristol-Myers took in regard to MEC's new preparation room. If the material presented on the summary judgment motion is subject to conflicting interpretations or if reasonable people might differ as to its significance, it is improper to grant summary judgment. *Grams v. Boss,* 97 Wis. 2d 332, 339, 294 N.W.2d 473, 477 (1980). Although it is clear from the record that Bristol-Myers' actions were such that it acted in a manner other than as a shareholder, it is a different question as to whether Bristol-Myers assumed a duty to MEC. Because of the genuine issues of material fact, we are not prepared to decide if the actions that were taken were

such that Bristol-Myers assumed a duty to MEC. Therefore, we reverse the judgment of the trial court and remand for further proceedings.

## B. CROSS-APPELLANTS' APPEAL

The cross-appellants were involved in some manner in the construction of the new preparation room and were sued by Miller. After Bristol-Myers' motion for summary judgment was granted, the cross-appellants moved for summary judgment based on the immunity provision in sec. 102.03(3), Stats. The motion was denied and their cross-claims for indemnity and contribution against Bristol-Myers were dismissed. Their motion for leave to appeal the summary judgment was denied by this court. This cross-appeal was filed in order to preserve their rights against Bristol-Myers in the event Miller prevailed. Because we reverse and conclude that Bristol-Myers is a third party subject to suit, the cross-claims are reinstated. However, we offer no opinion on the merits.

*By the Court.*—Judgment reversed and cause remanded.