PITROWSKI (Helen), Administratrix of the Estate of Frank J. Pitrowski, deceased, and Helen Pitrowski, Plaintiffs and Respondents, v. TAYLOR and others, Defendants and Respondents: CONTINENTAL CASUALTY COMPANY, Defendant and Appellant.*

No. 110. Argued September 5, 1972.—Decided October 5, 1972.
(Also reported in 201 N. W. 2d 52.)

---

* Motion for rehearing denied, with costs, on November 28, 1972.

616

For the appellant there was a brief and oral argument by *Eli Block* of Janesville.

For the respondents there was a brief and oral argument by *Roy E. Berg* of Janesville.

ROBERT W. HANSEN, J. The issues raised on this appeal relate to: (1) The pro rata liability of the two insurance carriers; (2) the claim of exemption from liability of appellant since it also was the workmen's compensation carrier; (3) the liability of appellant for reimbursement of attorney's fees; and (4) the liability of defendants Larsen and Cullen as supervisory employees or officers of the employer corporation.

*1. Pro rata liability.*

It is the contention of Continental that its insurance policy provided only excess coverage over the insurance provided by Travelers, and that, since the loss does not exceed the limits of the Travelers policy, Continental is not liable for any portion of the damages.

Both the Continental and the Travelers policies contain "other insurance" clauses, reading:

"**Other Insurance.** If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance.*" (Emphasis supplied.)

Both the Continental and Travelers policies contain the following definitions relevant to the application of the "other insurance" clause:

"**Automobile.** Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:

"(1) **Owned Automobile**—an automobile owned *by the named insured;*

"(2) **Hired Automobile**—an automobile used under contract in behalf of, or loaned to, *the named insured* provided such automobile is not owned by or registered in the name of (a) *the named insured* or (b) an executive officer *thereof* or (c) an employee or agent of *the named insured* who is granted an operating allowance of any sort for the use of such automobile;

"(3) **Non-Owned Automobiles**—any other automobile." (Emphasis supplied.)

In interpreting these two clauses, which are in both the Continental and Travelers policies, the trial court held: "The loss in the case at bar arose out of the use of 'any nonowned automobile,' since Ryan's truck was not owned by James Cullen, Larsen or Taylor, nor was it a vehicle rented or loaned to either of them. It was a vehicle rented to Jim Cullen, Inc., and owned by Ryan."

It is true that the automobile was not owned by Cullen, Larsen or Taylor, but the definitions clause of each policy provides that the determination of whether a vehicle is a "nonowned automobile" is to be made with reference to the named insured. So the term "nonowned automobile" relates to ownership by the party with whom the contract of insurance was made.[1]

Applying this approach or test, insofar as Travelers is concerned, the vehicle involved in this case was an "owned automobile," not a "nonowned automobile." It was an "owned automobile" because it was owned by William Ryan, the named insured under the Travelers policy. Because it was an "owned automobile" under the terms of the Travelers policy, the excess insurance clause of that policy does not apply. The only portion of the "other insurance" clause that does apply is the pro rata provision.

Applying the same approach or test to Continental's coverage, it is clear that the vehicle involved was not owned by Continental's named insured, Jim Cullen, Inc. However, it does not follow that this fact alone makes it a "nonowned automobile" under the Continental policy. For, in the definitions clause of the policy, "nonowned automobile" is any automobile other than an "owned automobile" or a *"hired automobile."* Here the vehicle

---

[1] *See: London & Lancashire Ins. Co. v. Allstate Ins. Co.* (1962), 72 N. J. Super. 369, 178 Atl. 2d 372.

involved was being hired or rented by Continental's named insured, Jim Cullen, Inc. But the Continental policy further provides that its coverage shall be excess insurance when the vehicle involved is a "hired automobile insured on a cost-of-hire basis." While the vehicle was hired, here it was not insured on a "cost-of-hire basis." Therefore, the excess insurance provision of the Continental policy does not apply. The only provision of Continental's "other insurance" clause that does apply is the pro rata provision.

The trial court interpreted the policies so that the excess insurance clauses of both policies applied. It then asked, "But excess over what?" and held the excess insurance clauses were to be disregarded and liability prorated between the two insurers.[2] We hold that neither excess insurance clause in the two policies here applies. The result of prorating the liability of the two insurers is the same under either approach. We reach the same destination but by different routes. Affirmance of the trial court conclusion is required.

## 2. *Workmen's compensation insurer.*

As an additional argument against its being held to pro rata liability, Continental contends that it is not liable under the comprehensive automobile or liability sections of its policy because it was also the workmen's compensation insurer. It is not disputed that Continental was the workmen's compensation carrier for Jim Cullen, Inc., and, in that capacity, made payments to Frank Pitrowski due under the Workmen's Compensation Act.

Continental cites one statute and two cases in support of its contention that being the compensation carrier absolves it from liability under its policy. The statute

---

[2] *See: Reetz v. Werch* (1959), 8 Wis. 2d 388, 392, 98 N. W. 2d 924, stating: ". . . Any attempt to give effect to both clauses puts one on a perpetual mental merry-go-round."

is sec. 102.03 (2), Stats.,[3] but, while this statute bars an action against the employer and workmen's compensation insurance carrier, it does not bar a suit against a fellow employee.[4] This action is brought against fellow employees and is, therefore, not barred by sec. 102.03 (2).

Continental asserts its dual roles as workmen's compensation carrier and liability insurer are so intertwined that the workmen's compensation claim is the only claim that can be asserted against it. The reference to intertwining comes from the *Kerner Case*,[5] but that involved a third-party liability suit against the insurer alleging negligence in making safety inspections on the employer's premises. The *Kerner* decision makes clear that a third-party action against fellow employees is not there involved, much less proscribed.[6] If there could be any doubt, it was removed by the *Wolff Case,* making clear that third-party suits against fellow employees are not prohibited, and the liability insurer, even if also the

---

[3] Sec. 102.03 (2), Stats., providing: "Where [conditions imposing liability under the workmen's compensation law] exist the right to the recovery of compensation pursuant to this chapter shall be the exclusive remedy against the employer and the workmen's compensation insurance carrier."

[4] *See: Zimmerman v. Wisconsin Electric Power Co.* (1968), 38 Wis. 2d 626, 157 N. W. 2d 648.

[5] *Kerner v. Employers Mut. Liability Ins. Co.* (1967), 35 Wis. 2d 391, 400, 151 N. W. 2d 72, stating: ". . . The dual roles of the compensation insurance carrier are so intertwined that the existence of the compensation claim as the exclusive remedy means no cause of action against that carrier in its capacity of public liability carrier."

[6] *Id.* at page 396, stating: ". . . The case held that actions against fellow employees were common-law actions which were not abolished by the workmen's compensation statutes. . . ." (Citing *Severin v. Luchinske* (1955), 271 Wis. 378, 73 N. W. 2d 477.)

workmen's compensation carrier for the employer, is not excused from liability.[7]

To the additional contention by Continental that defendants Cullen and Larsen are not included under coverage B of its policy, it is enough to note that the trial court found both Cullen and Larsen were included under coverage A of the Continental policy. This finding is not contested, and it is enough. Even if Cullen and Larsen do not fit under coverage B, they do fit under coverage A, and Continental is still liable.

Finally, Continental argues that Cullen and Larsen were supervisory employees and that suits against supervisory employees are barred under the *Wasley* holding.[8] All that this court held in *Wasley* was that a safe-place action can be brought only against an employer corporation and not against an employee of the corporation. *Wasley* made clear that, as to the safe-place statute, ". . . it is the employer who is liable, rather than an agent of the employer. . . ."[9] and that is so to insure that ". . . when the safe-place statute is violated . . . the underlying policy of the statute will not be circumvented by defenses of delegation or lack of notice. . . ."[10]

---

[7] *Wolff v. Sisters of St. Francis* (1969), 41 Wis. 2d 594, 600, 164 N. W. 2d 501, stating: "In the case under consideration, the third party is Schuh—not the employer Stokely or Liberty Mutual in its capacity of workmen's compensation insurer. Fortuitously, Liberty Mutual is Schuh's liability insurer." Since the suit was against a fellow employee [Schuh], it was not barred by sec. 102.03 (2), Stats., and his liability insurer, also the workmen's compensation carrier, was not relieved from liability as such insurer.

[8] *Wasley v. Kosmatka* (1971), 50 Wis. 2d 738, 184 N. W. 2d 821.

[9] *Id.* at page 744.

[10] *Id.* at page 744.

*3. Liability for fees.*

In addition to appealing from the prorating of damages between the two insurance carriers, Continental appeals from the trial court's determination that Continental is liable for one half of the attorney's fees of defendant Taylor and all of the attorney's fees of defendants Cullen and Larsen.

The trial court's holding that Continental is to pay all fees of Cullen and Larsen is based on these two defendants having made a timely tender of defense to Continental, but not to Travelers. The Continental contention that it ought not be required to pay any of the attorney's fees because it was the excess insurer, and Travelers the primary insurer, is disposed of by the holding that Continental was not an excess insurer.

There remains the question of whether Travelers also had a duty to reimburse Cullen and Larsen for attorney's fees and, if so, whether failure of Cullen and Larsen to make to Travelers a timely tender of defense releases Travelers from such duty.

The following portions of the Travelers policy are relevant to the issue raised:

"II **Defense, Settlement, Supplementary Payments.** With respect to such insurance as is afforded by this policy, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

"(b) (1) . . .
      (2) . . .
      (3) pay expenses incurred by the insured for such immediate medical and surgical relief to others as shall be imperative at the time of the accident;

(4) *reimburse the insured for all reasonable expenses,* other than loss of earnings, *incurred at the company's request;*

"and the amounts so incurred, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy." (Emphasis supplied.)

"**Conditions**

"**5. Assistance and Cooperation of the Insured.** The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. *The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."* (Emphasis supplied.)

The above policy provisions obligate Travelers to reimburse an insured only for expenditures when those expenditures, with the exception noted, are authorized by Travelers. Cullen and Larsen did not request Travelers to furnish them with legal counsel or defense, nor did they seek or secure authorization from Travelers for expenditures for attorney's fees. A case cited by Continental where reimbursement to an insured was ordered is not applicable, because in that case a default on the part of the insurer created the duty to reimburse.[11] In the case before us, with no breach of a duty to defend and no request to or authorization by Travelers for defense, we see no need and no way to disagree with the trial court's holding that Travelers is not to be required to pay all or part of the legal fees incurred by Cullen

---

[11] In *Continental Casualty Co. v. Zurich Ins. Co.* (1961), 17 Cal. Rptr. 12, 18, 366 Pac. 2d 455, 461, the court stated, ". . . Having defaulted such agreement the company is manifestly bound to reimburse its insured . . . ."

and Larsen. As there was no default, there is no duty to reimburse. The trial court's order as to payment of legal fees of Cullen, Larsen and Taylor is affirmed.

## 4. Liability of supervisory employees and officers.

In the case before us, the trial court included in its findings of fact a specific finding: "That Leslie Taylor, Charles Larsen, and James Cullen . . . were engaged in loading the truck of W. P. Ryan and the accident was caused by the loading processes." For our purpose here, that finding of fact, unchallenged in the briefs on this appeal, is enough to make clear that this case fits into the category of a third-party suit against a fellow employee for acts of negligence rather than an action against an officer of a corporation for violation of the statutory requirements of the safe-place statute.

However, in finding Cullen and Larsen negligent, the trial court found ". . . the duty of Cullen and Larsen, individually, was to furnish employment that was 'safe,' a violation of which duty was negligence. Secs. 101.01 (3), 101.06." The reference clearly is to the requirements of the safe-place statute, not to common-law standards of negligence. The trial court additionally stated, ". . . neither Cullen nor Larsen are immune under sec. 102.03(2) from liability to deceased for tort arising from violation of sec. 101.06. . . ." In view of our recent decision in *Wasley,* this statement of the law is incorrect. *Wasley* provides that the duty of complying with sec. 101.06, Stats., is on the employer, here the corporate employer. It cannot be delegated to or placed upon Cullen and Larsen, as officers or employees. Their liability must rest upon common-law failure to exercise ordinary care toward an employee to whom, under the circumstances, they owed a duty— [12] not upon the increased

[12] *See: Hoeverman v. Feldman* (1936), 220 Wis. 557, 265 N. W. 580, as cited in *Wasley v. Kosmatka, supra,* at page 745.

standard of care that the safe-place law imposes on an employer.

The finding of negligence against Cullen and Larsen for failure to furnish employment that was safe, as required by sec. 101.06, Stats., must be set aside as contrary to law. This, ipso facto, sets aside the allocation of negligence made by the trial court. The case is remanded with directions for the trial court, on the record of trial proceedings, to (1) determine whether defendants Larsen and Cullen, either or both, were negligent in failing to exercise ordinary care toward a fellow employee under the common-law standard; and (2) determine the proper allocation of negligence among the parties.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings consistent with this opinion.