Robert E. VOIT and Burnett Shooting Preserve & Game Preserve, Plaintiffs-Respondents,

v.

MADISON NEWSPAPERS, INC., and Wisconsin State Journal, Defendants-Appellants.†

Supreme Court

*No. 82–2103. Argued November 29, 1983.—
Decided January 4, 1984.*

(Also reported in 341 N.W.2d 693.)

† Motion for reconsideration denied March 5, 1984.

For the defendants-appellants there were briefs by *Bradway A. Liddle, Jr., Michael P. May* and *Boardman, Suhr, Curry & Field,* Madison, and oral argument by *Mr. May.*

For the plaintiffs-respondents there was a brief by *James J. Kriva* and *Kasdorf, Dall, Lewis & Swietlik, S.C.,* Milwaukee, and oral argument by *Mr. Kriva.*

Amicus curiae brief was filed by *James P. Brody, Thomas L. Shriner, Jr.,* and *Foley & Lardner,* Milwaukee, for Newspapers, Inc.

WILLIAM A. BABLITCH, J.   Madison Newspapers, Inc. (MNI) and Wisconsin State Journal (defendants) appeal from an order denying their motion to change venue of the trial of a libel action from Waukesha county to Dane county.[1] The issues presented for review are: (1) Does sec. 801.50(6), Stats., allow a libel action against a corporate newspaper publisher to be venued in a county other than the county in which the allegedly defamatory statement was initially published? (2) If so, does sec. 801.50(6) violate the equal protection clause of the fourteenth amendment?

[1] The trial court also granted, in part, a motion to compel discovery that the plaintiffs had filed. The parties have not challenged that part of the order, and it is not at issue in this review.

We hold that because some part of the plaintiffs' cause of action arose in Waukesha county, Waukesha county is a proper place of venue under sec. 801.50(6), Stats. We also hold that sec. 801.50(6) does not violate the equal protection clause of the fourteenth amendment. We therefore affirm the order of the circuit court.

Plaintiff Robert Voit resides in Waukesha county. He is the owner and proprietor of the Plaintiff Burnett Shooting Preserve and Game Farm (Burnett Game Farm), located in Dodge county, Wisconsin. The Burnett Game Farm is a private hunting club that provides recreational activities to its members, including pheasant hunting, trap shooting, snowmobiling, and related services. Of the 112 members of the club, 53 percent of them reside within Waukesha county.

MNI is a Wisconsin corporation with its principal place of business in Dane county. MNI prints the Wisconsin State Journal newspaper in Dane county. Its circulation records indicate that there are 17 subscribers in Waukesha county who receive the Sunday edition of the Wisconsin State Journal. Although there is no organized distribution in Waukesha county of the Wisconsin State Journal at retail outlets under MNI's control, Voit stated in an affidavit that at least one retail outlet in Waukesha county does sell the Sunday Wisconsin State Journal. The defendants have stated that copies of the Sunday Wisconsin State Journal might be sold inside Waukesha county through independent contractors.

On June 6, 1982, the sports section of the Sunday edition of the Wisconsin State Journal contained an advertisement concerning the Burnett Game Farm that was very similar in form to advertisements the plaintiffs had previously run from time to time in the Sunday sports section of the Wisconsin State Journal. The advertisment on June 6 contained part of the plaintiffs' logo, and stated: "Attention HUNTERS! Don't get TAKEN by joining the BURNETT GAME FARM near the Horicon Marsh. This ad is paid for by several who did."

On August 30, 1982, Voit and the Burnett Game Farm filed a complaint against MNI and the Wisconsin State Journal in the circuit court for Waukesha county. Voit alleged that the above advertisement and a similar ad that had been published in the Wisconsin State Journal in 1981 were false and defamatory, and that he had received numerous comments, calls, and one letter from within Waukesha county concerning this ad from his customers and others. The plaintiffs allege that they have suffered damages to their reputations and pecuniary loss because of the advertisements.

The defendants filed a demand pursuant to sec. 801.53, Stats.,[2] to change venue from Waukesha county to Dane

---

[2] Section 801.53, Stats., provides in part:

"**Change of venue to proper county.** When the county designated in the complaint is not the proper place of trial, except as to actions named in s. 801.50(1), the defendant may, within 20 days after the service of the complaint, serve upon the plaintiff a demand in writing that the trial be had within a proper county, specifying the county or counties, and the reason therefor. . . ."

county on the grounds that the defendants have their principal office in Dane county and that the alleged cause of action arose there. The defendants subsequently filed a motion for a change of venue.

After a hearing, the trial court denied the motion to change venue. The defendants filed a petition in the court of appeals for leave to appeal a non-final order, pursuant to sec. 809.50, Stats. The court of appeals certified the case to this court, and we accepted the certification.

The venue of a libel action against a corporate publisher is an issue of first impression in Wisconsin. The plaintiffs, in arguing that venue properly lies in Waukesha county, rely on sec. 808.50(6), Stats., which provides in part that the proper place of trial of a civil action against a corporation is in the county in which "some part" of the cause of action arose. The plaintiffs contend that because the defendant newspaper was sold in Waukesha county, because Voit operated the Burnett Game Farm from within Waukesha county, and because the plaintiffs sustained reputational and economic damages inside Waukesha county as a result of the advertisement, Waukesha county is a proper place of venue.

The defendants argue that it is immaterial whether they circulated or caused their newspaper to be circulated in another county, and it is immaterial where the person alleged to have been defamed resided or suffered damages.

The defendants contend that the only place a corporate publisher of a newspaper can be sued is in the county where the newspaper is initially published. We disagree.

It is well established in Wisconsin that a plaintiff has the right to select the place of trial when venue may properly be placed in more than one county. Section 801.51, Stats., provides in part: "Place of trial, general rule, exceptions. The county designated in the complaint shall be the place of trial, unless the same be changed as provided in this chapter. . . ." In *State ex rel. Department of Health & Social Services v. Circuit Court,* 71 Wis. 2d 156, 158, 237 N.W.2d 692 (1976), we discussed the predecessor statute to sec. 801.51 and stated,

"[Former] sec. 261.02, Stats., gives the plaintiff the choice of designating the place of trial. However, if the county chosen is not a 'proper' county for trial . . . then the defendants may demand, under sec. 261.03, a change of venue to a 'proper' county as a matter of right. Yet a change of venue as a matter of right cannot be granted when the action is already venued in a 'proper' county . . . ."

In this case, the county designated in the plaintiffs' complaint is Waukesha. If that county is a "proper" county for venue purposes, the defendants may not be granted a change of venue as a matter of right.

Under sec. 801.50(6), Stats., the proper place of trial of a civil action against a corporation is ". . . the county

in which it has its principal office or in which the cause of action or some part thereof arose." The primary issue in this case involves the interpretation of sec. 801.-50(6) and specifically the phrase, ". . . in which the cause of action or some part thereof arose." We conclude that under the facts of this case, "some part" of the cause of action arose in Waukesha county.

In order for a cause of action for libel to arise, one element that must be established is that there is a defamatory statement. *See* Restatement (Second) of Torts, sec. 558 (1977). A defamatory statement is one that " 'tends so to harm the reputation of another so as to lower him in the estimation *of the community* or to deter third persons from associating or dealing with him.' " (Emphasis added.) *Denny v. Mertz,* 106 Wis. 2d 636, 643, 318 N.W.2d 141 (1982), quoting *Westby v. Madison Newspapers, Inc.,* 81 Wis. 2d 1, 6, 259 N.W.2d 691 (1977). Reputation is the ". . . estimation in which one's character is held by his neighbors or associates." Restatement (Second) of Torts, sec. 577, comment b (1977). In this case, the plaintiffs allege that the statement that appeared in the Sunday edition of the Wisconsin State Journal was defamatory in that it harmed their reputations in the community of Waukesha county. Voit resides in Waukesha county and operates the Burnett Game Farm from his residence. Although the Burnett Game Farm is not located in Waukesha county, Voit stated in his affidavit that 53 percent of the active members of the Burnett Game Farm reside in Waukesha county. Voit also stated that he has received numerous telephone calls at his residence and comments in Waukesha county from other Waukesha county residents concerning the advertisement. These comments allegedly have been made by both members and nonmembers of the Burnett Game Farm. Therefore, it is evident that

Voit and the Burnett Game Farm have reputations in Waukesha county that may have been injured by the allegedly defamatory advertisement in that county.

Another element in establishing tort liability for libel is that the defamatory statement be published, which means that it must be communicated to someone other than the person defamed. *See Ranous v. Hughes,* 30 Wis. 2d 452, 461, 141 N.W.2d 251 (1966) ; W. Prosser, *Handbook of the Law of Torts,* sec. 113 (4th ed. 1971). Because publication requires that the defamatory matter be communicated to a third person, it is necessary not only that the defamatory statement be brought to a third person's attention, but also that the third person understand its defamatory significance. *See* Restatement (Second) of Torts, sec. 577, comment c (1977). Therefore, a cause of action for libel does not arise until there is publication of the defamatory matter, and there is no publication until the defamatory matter is communicated to a third person and understood by that person as being defamatory of the party alleging libel.

We have previously held that every sale and delivery of a written or printed copy of a libel is a fresh publication. *Street v. Johnson,* 80 Wis. 455, 458 (1891). The record indicates that at the time the allegedly defamatory advertisement was printed, there were seventeen subscribers in Waukesha county who received the Sunday edition of the Wisconsin State Journal. In addition, Voit stated in his affidavit that the Sunday edition of the Wisconsin State Journal was sold at least at one retail outlet in Waukesha county. Because the Sunday edition of the Wisconsin State Journal was sold and delivered in Waukesha county, the allegedly defamatory advertisement was, for purposes of a libel action, communicated to third persons in Waukesha county.

As previously noted, Voit resides in Waukesha county and operates the Burnett Game Farm from his residence. Voit also stated in his affidavit that 53 percent of the active members of the Burnett Game Farm also reside in that county. Given these circumstances, some of the third persons in Waukesha county to whom the defamatory matter was communicated would understand the significance of the libel, since Voit and the Burnett Game Farm presumably have established reputations there. Therefore, publication of the allegedly defamatory matter, which is an essential part of a cause of action for libel, occurred in Waukesha county.

Finally, the basic function of venue statutes is to set a fair and convenient location for trial. *See* Comment, *Venue Problems In Wisconsin*, 56 Marq. L. Rev. 87, 116 (1972–73). The primary function of a libel action is to allow an individual to restore his or her injured reputation. *See Gaetano v. Sharon Herald Company*, 231 A.2d 753, 755 (Pa. 1967). Neither function would be promoted by interpreting sec. 801.50(6), Stats., to require a plaintiff to litigate a cause of action for libel only in the county where the corporate publisher first published the newspaper. The plaintiff's reputation may be little known or unknown in that county. In this case, the plaintiffs seek to bring their cause of action in the community in which they allege that their reputations are known and have been injured because of the publication of the defamatory matter in that county. It is fair to allow the plaintiffs the opportunity to clear their names in the community where their reputations are known and allegedly have been injured by a defamatory advertisement printed in a newspaper circulated in that community.

We note that our holding in this case is consistent with the holdings of courts in other jurisdictions that have

considered the issue of where venue of a cause of action for libel against a corporate publisher may properly lie. Those courts have rejected the argument advanced by the defendants in this case that venue must lie where the allegedly defamatory matter was initially published. *See, e.g., Buck v. James McClatchy Publishing Co.*, 287 P. 364 (Calif. 1930); *FirstAmerica Development Corp. v. Daytona Beach News-Journal Corp.;* 196 So. 2d 97 (Fla. 1966); *Rae v. Advance Publications, Inc.*, 60 Misc. 2d 792, 303 N.Y.S.2d 911 (N.Y. 1969); *Gaetano v. Sharon Herald Co.*, 231 A.2d 753 (Pa. 1967).

The defendants also argue that allowing venue to lie against a corporate publisher in a county other than the county in which the defamatory matter was initially published violates the equal protection clause of the fourteenth amendment. They assert that this affords them different treatment than an individual publisher because they contend that under sec. 801.50 (12), Stats.,[3] a libel action against an individual publisher may lie only where that publisher resides. The defendants argue that our interpretation of sec. 801.50 (6) creates a classification between corporate and individual publishers that implicates first amendment rights because it may prompt a corporate publisher either to refrain from printing certain stories or to curb circulation to counties where it may not want to defend against libel actions.

We conclude that any relationship between our interpretation of sec. 801.50 (6), Stats., in this case and the exercise of first amendment rights by corporate publishers is so tenuous that it does not support the assertion

---

[3] Section 801.50 (12), Stats., provides:

"OTHER ACTIONS. Of any other action, the county in which any defendant resides at the commencement of the action; or if no defendant resides in this state, any county which the plaintiff designates in his complaint."

that the alleged classification between corporate and individual publishers implicates any fundamental rights protected by the first amendment. Nevertheless, we must still determine whether there is any rational basis to support the classification. *See State v. Hart,* 89 Wis. 2d 58, 65, 277 N.W.2d 843 (1979). The basic test is not whether some inequality results from the classification, but whether there is a reasonable basis justifying the classification. *Omernick v. State,* 64 Wis. 2d 6, 19, 218 N.W. 2d 734 (1974).

We hold that there is a rational basis to support the classification, and that sec. 801.50(6), Stats., as interpreted in this case, does not violate the equal protection clause. A corporate publisher enjoys certain benefits and privileges as a result of incorporating that an individual publisher does not have. The legislature could reasonably require a publisher that avails itself of the benefits afforded by incorporation to face the possibility of defending against a suit in a county other than the county in which it has its principal place of business. In addition, the legislature could reasonably assume that a corporate publisher will circulate its material throughout a wider geographic area than would an individual publisher. It is therefore not unreasonable for the legislature to provide, as we interpret sec. 801.50(6), that a corporate publisher may have to defend against a cause of action for libel in a county if at least some part of the cause of action arose in that county.

*By the Court.*—The order of the circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. (concurring). I concur in the result. In an appropriate case this court should review *Street v. Johnson,* 80 Wis. 455, 458 (1891), to determine if the Johnson case adopts the multiple publication rule and whether the court should follow the

multiple or single publication rule. See 3 Restatement (Second) of Torts, sec. 577 (1977) ; Uniform Single Publication Act, 14 U.L.A. 351–355 (1980) ; *Hartmann v. American News Co.,* 69 F. Supp. 736 (1947). I do not believe that in this case the plaintiffs may bring multiple suits against the defendants for multiple copies of the newspaper distributed in multiple counties. The plaintiffs have one all-encompassing cause of action and a proper venue for that action is in this case Waukesha County.