TOWNE REALTY, INC., Joseph Zilber, Donald Grande and Gerald Stein, Plaintiffs-Respondents,

v.

ZURICH INSURANCE COMPANY, Defendant-Appellant.†

Court of Appeals

*No. 94–1743. Submitted on briefs February 28, 1995.—Decided April 18, 1995.*

(Also reported in 534 N.W.2d 886.)

†Petition to review granted.

544

547

548

For the defendant-appellant the cause was submitted on the briefs of *Paul J. Pytlik* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.* of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the brief of *Michael R. Wherry* and *James E. Culhane* of *Davis & Kuelthau, S.C.* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Zurich Insurance Company appeals a summary judgment concluding that it breached its duty to defend Towne Realty, Inc., Joseph Zilber, Donald Grande and Gerald Stein (Towne) against a suit brought by Joseph Balestrieri and Leslie West Balestrieri (Balestrieris) and awarding costs to Towne for attorney fees it incurred in defending the complaint. The amount of attorney fees to which Towne was entitled was determined following a contested hearing. Zurich contends that the trial court erred by granting Towne's motion for summary judgment because it did not have a duty to defend Towne against the Balestrieri complaint. Further, Zurich contends that it did not have a duty to defend Towne prior to January 2, 1992, because Towne's letter of October 21, 1991, was not a proper tender of defense. Finally, Zurich argues that even assuming that it did have a duty to defend Towne and that Towne properly tendered the defense on October 21, the trial court erred by awarding Towne attorney fees for: (1) legal expenses incurred prior to the time the Balestrieri complaint was tendered to Zurich on October 21; (2) legal expenses incurred in prosecuting counterclaims against the Balestrieris

after the Balestrieris voluntarily dismissed their complaint without prejudice; and (3) legal expenses incurred in attempting to establish the amount of legal fees expended in the Balestrieri action and the subsequent declaratory judgment action against Zurich. We conclude that Zurich had a duty to defend Towne, that it breached this duty and that the trial court's award of attorney fees was proper because it correctly reflected costs necessarily incurred in the defense of the complaint. We therefore affirm the judgment.

## FACTS

In 1990, Towne Realty acquired a commercial general liability insurance policy from Zurich. Zilber, Grande and Stein were covered under the policy pursuant to the "Named Insured Endorsement." Under the terms of the policy, the plaintiffs were insured for liability that resulted from "bodily injury and property damage," as well as "Personal and Advertising Injury Liability." Zurich had a duty to defend the insureds for any suits covered by the terms of the policy.

On October 10, 1991, Joseph Balestrieri filed a complaint against the Towne plaintiffs. The complaint alleged that in 1987, Joseph Balestrieri and Joseph Zilber formed The Joseph Entertainment Group, Inc. (JEG). JEG owned the Alpine Valley Music Theatre, Inc. and the Riverside Theatre, Inc. Balestrieri and Zilber each owned fifty percent of JEG.

In addition to his ownership interest in JEG, the complaint alleged that Zilber had a controlling interest in Towne Realty. Towne Realty, which employed Donald Grande and Gerald Stein, acted as landlord at the Riverside Theatre. The complaint alleged that from 1990 to 1991, Zilber, in conjunction with Grande and Stein, stripped assets from JEG in the amount of

approximately $5,095,000. The complaint further stated that Towne breached an oral contract to lease the Riverside Theatre to the Balestrieris.

Based on the allegations in their complaint, the Balestrieris stated several causes of action against the named defendants. The following paragraphs are relevant to the disposition of this case:

> 63. Plaintiffs allege that defendants, COOKE, MANDEL, VOBORIL, HADDAD, HADDAD ENTERTAINMENT, and STEIN, directly and as an agent of ZILBER, GRANDE directly and as an agent of ZILBER, and ZILBER conspired to deprive plaintiffs of the opportunity to engage in their chosen professions at the Riverside Theatre. As a direct and proximate result of the actions of defendants, the business and personal reputations of plaintiffs have been so seriously maligned that plaintiffs reasonably believe they are precluded from engaging in their chosen professions within the United States.
>
> . . . .
>
> 74. Plaintiffs further allege that said infliction of mental distress has resulted in the seeking of medical care to address and treat the effects of injuries perpetrated by defendants on plaintiffs.

The individual defendants and Towne learned of the Balestrieri complaint on October 10, 1991, and immediately retained the services of an attorney to defend them in the action. On October 21, Towne sent a letter to Zurich informing Zurich of the claim. Three days later, Zurich sent a reply letter acknowledging receipt of Towne's letter.

In November, Towne filed its responsive pleadings to the Balestrieri action. Towne also filed counterclaims that alleged several causes of action including defamation and a shareholder derivative claim. On

January 2, 1992, Towne sent a second letter to Zurich reminding it of the claim and requesting that Zurich inform Towne of its position on the claim. Zurich did not respond to Towne's letter until May 18, 1992, at which time it denied coverage and refused to defend the suit.

On January 6, the Balestrieris filed a motion to voluntarily dismiss their claims against Towne without prejudice. The court granted the motion. Despite the dismissal of the Balestrieris' suit, Towne continued to prosecute its counterclaims until June 4, when a stipulation and order for dismissal was filed with the trial court.

Towne subsequently filed a complaint for declaratory judgment against Zurich. The complaint sought a declaration that Zurich had a duty to defend Towne against the Balestrieri suit, that it breached its duty and that it was liable to Towne for attorney fees expended in defense of the action. Both Towne and Zurich filed motions requesting summary judgment, and a hearing was subsequently held. At the hearing, the trial court determined that the portion of the Balestrieri complaint that alleged damage to reputation sufficiently stated a claim for "personal injury" as that term was defined in the policy. The court further concluded that the allegation that the Balestrieris required medical care as a result of the mental distress inflicted by Towne sufficiently stated a claim for "bodily injury" under the policy. Accordingly, the trial court concluded that Zurich had a duty to defend Towne and granted Towne's motion for summary judgment.

Approximately six months later at a contested hearing to determine the amount of attorney fees and costs to which Towne was entitled, the trial court concluded that Towne was entitled to all legal fees

incurred from the time the Balestrieri suit was commenced on October 10, 1991, until it was dismissed. Further, the trial court awarded Towne attorney fees incurred in the prosecution of its counterclaims after the Balestrieri suit was dismissed, concluding that the counterclaims were maintained as a defensive tactic because it was anticipated that the Balestrieris would refile their claim. Finally, the trial court awarded Towne attorney fees incurred in prosecuting the declaratory judgment action against Zurich and in attempting to establish the legal fees expended in defending against the Balestrieris' action. Zurich appeals.

## DUTY TO DEFEND

Zurich first contends that the trial court erred by granting Towne's motion for summary judgment because Zurich did not have a duty to defend Towne under the insurance policy. We review a summary judgment de novo, applying the same methodology as the trial court. *See* § 802.08(2), STATS. Because that methodology is familiar, we need not repeat it here. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Whether an insurer has a duty to defend is a question of law that we review without deference to the trial court. *Kenefick v. Hitchcock*, 187 Wis. 2d 218, 231-32, 522 N.W.2d 261, 266 (Ct. App. 1994). The existence of a duty to defend depends solely upon the nature of the claim being asserted against the insured and has noth-

ing to do with the merits of the claim. *Id.* All doubt as to the existence of a duty to defend must be resolved in favor of the insured. *Elliott v. Donahue,* 169 Wis. 2d 310, 321, 485 N.W.2d 403, 407 (1992). Where coverage is disputed, the insurance company should "request a bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the issue of coverage is resolved." *Newhouse v. Citizens Sec. Mut. Ins. Co.,* 176 Wis. 2d 824, 836, 501 N.W.2d 1, 6 (1993). If the insurance company follows this procedure, it runs no risk of breaching its duty to defend. *Id.* However, if the insurance company refuses to defend the claim without determining whether it is required to do so, it may be held liable to the insured for all damages that "naturally flow from the breach." *Id.* at 837, 501 N.W.2d at 6.

The issue whether Zurich breached its duty to defend Towne requires us to determine whether the Balestrieris' allegation that their reputation was "maligned" by Towne's conduct was sufficient to allege a "personal injury" under the terms of the insurance policy. Accordingly, our analysis begins with a review of the policy's language. The policy provides:

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages.

. . . .

SECTION V—DEFINITIONS

. . . .

10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

. . . .

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

This policy provides coverage to Towne in the event it slanders or libels a person through oral or written publication. A publication is libelous or slanderous if it " 'tends so to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' " *Voit v. Madison Newspapers*, 116 Wis. 2d 217, 222, 341 N.W.2d 693, 697 (1984) (citation and emphasis omitted).

 Here, paragraph 63 of the Balestrieris' complaint alleges that the Balestrieris' reputations were seriously "maligned" by Towne's actions and that this injury precluded them from engaging in their chosen professions within the United States. WEBSTER'S THIRD INT'L DICTIONARY 1367 (Unabr. 1976) defines "malign" as: "[T]o utter injuriously misleading or . . . false reports about." Thus, while the Balestrieris' complaint did not expressly state a claim for libel or slander, the implication of this allegation is that Towne published false or misleading statements about them that caused damage to their reputation. Further, because the complaint states that the Balestrieris could no longer engage in their chosen profession, it reasonably suggests that damage was done to their reputation.

555

Moreover, we note that the policy's definition of "personal injury" includes the disparagement of one's services. The Balestrieris' allegation that they could no longer engage in their chosen profession, taken in conjunction with their allegation that they were maligned by Towne, suggests that Towne disparaged the Balestrieris' services. Accordingly, the Balestrieris' allegation was sufficiently broad to suggest a claim within the policy's definition of "personal injury." Because we are required to resolve all doubts concerning coverage in favor of the insured, we conclude that Zurich had an obligation to defend Towne, at least until the nature of the claim could be otherwise determined. Zurich's failure to provide Towne with a defense was a breach of this duty, thus rendering them liable for damages.

Zurich, however, relies on *Nichols v. American Employers Ins. Co.*, 140 Wis. 2d 743, 412 N.W.2d 547 (Ct. App. 1987), as support for its contention that the Balestrieri complaint did not state a claim within the policy's definition of "personal injury." We are not persuaded. In *Nichols*, the plaintiff filed a complaint against Nichols Motors, alleging that it had discriminated against her based on gender. *Id.* at 745, 412 N.W.2d at 549. Nichols subsequently tendered the defense to its insurer. *Id.* Under the insurance policy, Nichols was covered against defamation claims. *Id.* Nichols argued that because the plaintiff made claims that were arguably defamatory, it was covered under the policy. *Id.* at 746-47, 412 N.W.2d at 549. This court, however, rejected Nichols' argument and concluded that Nichols was not covered under the policy. In arriving at this conclusion, we expressly stated: "Nowhere does she relate any statements alleging defamation. In

fact, the complaints are devoid of any statements that could be considered an allegation of defamation." *Id.*

*Nichols* is distinguishable from this case because the Balestrieris' complaint did make an allegation that could reasonably be construed as a claim for libel, slander or disparagement of services. As we previously concluded, the gravamen of paragraph 63 of the Balestrieri complaint is that their personal and business reputations were maligned as a result of Towne's actions. Damage to one's reputation is the essence of a cause of action for libel or slander. Thus, unlike *Nichols*, the Balestrieris' allegation that they were maligned and that their reputations were damaged was sufficient to fall within the definition of "personal injury" as defined by the Zurich policy. Because we conclude that the Balestrieris' complaint stated a claim for "personal injury" under the policy, we need not address the issue whether the complaint stated a claim for "bodily injury" as well.

Zurich, however, next contends that it did not have a duty to defend Towne prior to January 2, 1992, because Towne's letter of October 21, 1991, was not sufficient to tender the defense. Zurich argues that the October 21 letter merely asked for a determination of coverage and that because the letter did not specifically request a defense, Zurich did not have an obligation to assume a defense on Towne's behalf. Whether the October 21 letter was legally sufficient to tender the defense is a question of law that we review without deference to the trial court. *See Nottelson v. Department of Industry, Labor and Human Relations*, 94 Wis. 2d 106, 115-16, 287 N.W.2d 763, 768 (1980).

The adequacy of a tender of defense appears to be an issue of first impression in Wisconsin. Our review of this issue in other jurisdictions reveals a split of

authority. Several states have concluded that a tender of defense is sufficient if the insured puts the insurer on notice of the claim. *See* A. WINDT, INSURANCE CLAIMS AND DISPUTES § 4.01, at 128-29 (2d ed. 1988). Other jurisdictions, however, hold that an insurer's duty to defend does not arise unless the insured specifically requests the insurer to undertake the defense of the action. *See, e.g., Hartford Accident & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir. 1985); *Time Oil Co. v. Cigna Property & Cas. Ins. Co.*, 743 F. Supp. 1400, 1420 (W.D. Wash. 1990); *Litton Systems v. Shaw's Sales & Serv., Ltd.*, 579 P.2d 48, 52 (Ariz. Ct. App. 1978).

We are persuaded by those jurisdictions that hold that notice of the claim is sufficient to tender a defense. There are two reasons we conclude this to be the better rule. First, the insured is frequently less sophisticated and knowledgeable with regard to the intricacies of an insurance company's duty to defend than is the insurer which has a staff of professionals available to assist it in discharging its obligation to defend. Because the insurance company is in a better position to understand its obligation to defend, notice of the claim . should be sufficient to invoke the insurer's duty to determine coverage and its obligation to defend. Further, this rule is consistent with the assumption that when an insured is owed a defense under the terms of its policy, the insured desires the benefit of the policy for which the insured has paid a premium. Finally, this rule protects the insured by placing the burden of ensuring that there is clear communication between the parties upon the insurer, who is in a better position to undertake this task. Thus, for the foregoing reasons, we conclude that if the insurer has notice of the claim

and does not obtain a clear and express waiver of its duty to defend, the insurer remains obligated to defend the insured for those claims that fall within the terms of the policy.

In this case, there is no question that the October 21 letter put Zurich on notice of the claim. The letter specifically requested that Zurich undertake an examination of the complaint, which was included with the letter, 'to determine whether the Balestrieris' claims were covered by the policy. Moreover, the letter requested Zurich to continue with the attorney Towne had obtained in the defense of this action, which suggested that if coverage existed Towne assumed Zurich would undertake the defense. Thus, while we need not determine this issue, the letter's reference to continuing counsel could be construed as a request that Zurich assume defense of the action. Because the October 21 letter was sufficient to put Zurich on notice of the claim against Towne, we conclude that Towne properly tendered defense of the action to Zurich.[1]

## DAMAGES

Having concluded that Zurich had a duty to defend Towne and that it breached this duty, we must next determine whether the trial court's award of attorney fees was proper. This is a question of law that we review without deference to the trial court. *Newhouse*, 176 Wis. 2d at 837, 501 N.W.2d at 6. To determine the

---

[1] Zurich has not advanced an argument as to whether Towne's tender of defense was made within a reasonable time. Accordingly, this issue is waived and need not be addressed on appeal. *Wirth v. Ehly*, 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980).

amount of damages an insured is entitled to receive as a result of an insurer's breach of its duty to defend, we apply a breach of contract analysis. *Id.* Under this analysis, the insurer is liable for all damages that "naturally flow" from its breach. *Id.* at 837-38, 501 N.W.2d at 6. Such damages not only include those expenses necessary to defend against the claim, but also legal expenses incurred in establishing coverage.[2] *Elliott*, 169 Wis. 2d at 322, 485 N.W.2d at 408.

Zurich raises a variety of objections to the trial court's award of attorney fees. Specifically, Zurich contends that the trial court erred by awarding Towne attorney fees for: (1) legal expenses incurred prior to the time the Balestrieri complaint was tendered to Zurich; (2) legal expenses incurred in prosecuting counterclaims against the Balestrieris after the Balestrieris voluntarily dismissed their complaint without prejudice; and (3) legal expenses incurred in attempting to establish the amount of legal fees expended in the Balestrieri action and the subsequent declaratory judgment action against Zurich. We shall address each of these contentions in turn.

The Balestrieris commenced their suit against Towne on October 10, 1991. Towne, however, did not provide Zurich with notice of the claim until October 21. Towne argued that an attorney's services were immediately necessary because the Balestrieri action was a highly visible claim that generated wide publicity, thereby requiring it to take immediate legal action

---

[2] Our supreme court has specifically declared that the general American rule, which holds the prevailing party responsible for his or her own attorney fees, does not apply to breach of contract actions based upon an insurer's failure to defend. *Elliott v. Donahue*, 169 Wis. 2d 310, 324-25, 485 N.W.2d 403, 409 (1992).

to protect its business interests and reputation from significant injury. Therefore, it contended that it was entitled to recover these fees. The trial court agreed with Towne, concluding that these expenses were both reasonable and necessary to the defense of the Balestrieri action.

Zurich, however, argues that the trial court erred by awarding Towne attorney fees incurred prior to October 21. Relying on *Pitrowski v. Taylor*, 55 Wis. 2d 615, 201 N.W.2d 52 (1972), Zurich argues that an insurer is not liable for costs and fees incurred by the insured until such time as the defense is tendered. Therefore, because Towne did not tender the defense until October 21, Zurich contends that it is not liable for any fees incurred prior to that date. We do not agree with Zurich's reading of *Pitrowski*.

In *Pitrowski*, our supreme court concluded that the insurer was not liable to the insured for attorney fees because the insured failed to tender the defense. We agree with *Pitrowski* that an insured's failure to tender the defense to the insurer relieves the insurer of its duty to defend. In this case, however, we have already concluded that Towne properly tendered defense of the claim to Zurich. Accordingly, the only question is whether Towne was entitled to recover the legal expenses it incurred prior to tendering the defense. Because these expenses were necessary to Towne's defense, we conclude that the trial court properly awarded Towne attorney fees incurred prior to the time it tendered the defense.

In *Newhouse*, our supreme court expressly stated that an insured is entitled to costs and attorney fees incurred in defending the suit. *Id.* at 837-38, 501 N.W.2d at 6. Thus, because Zurich does not challenge

whether the defense was tendered within a reasonable time, the issue is whether the legal fees were necessary to defend against the claim. In this case, the trial court found that the fees incurred between October 10 and October 21 were necessary to defend the claim. There is sufficient evidence to support the trial court's finding. The Balestrieri claim resulted in tremendous publicity. As a result of this publicity, Towne was required to take prompt legal action to avoid damage to its reputation and business interests.

Further, we note that Zurich does not contend that the legal expenses Towne incurred during the initial ten-day period were unnecessary, nor has it challenged the trial court's factual finding on this point. Rather, Zurich's position is that expenses incurred prior to the tender of the defense may not be recovered by the insured, regardless of their necessity. We see no basis for such a rule. In fact, such a rule would conflict with *Newhouse*, which requires the insurer to pay damages in the amount necessary to make the insured whole. *Id.* at 838, 501 N.W.2d at 7.

For the sake of clarity, we note that our conclusion does not authorize every defendant to immediately hire an attorney for the purpose of defending a claim and charge the expenses to their insurance company. An immediate legal response is not generally necessary to the proper defense of a claim. In this case, however, the Balestrieris' complaint endangered Towne's ability to continue its business and the trial court found that an immediate response was necessary to protect its interests. Accordingly, these expenses were recoverable.

Zurich next challenges the trial court's award of legal expenses that Towne incurred in prosecuting its counterclaim after the Balestrieris voluntarily dismissed their complaint. Relying on *Edgerton v. General*

*Cas. Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994), Zurich contends that an insurer's obligation to defend ceases once the plaintiff's complaint is dismissed. Zurich's reliance on *Edgerton* is misplaced. In *Edgerton*, our supreme court held that an insured's receipt of letters from the DNR requesting remediation of a contaminated site did not trigger the insurer's duty to defend because the letters did not constitute a "suit" under the policy. *Id.* at 781-82, 517 N.W.2d at 477. The court further noted that "the primary attribute of a 'suit' is that parties to an action are involved in actual court proceedings, initiated by the filing of a complaint." *Id.* at 775, 517 N.W.2d at 474. Because no complaint had been filed, the *Edgerton* court held that the insurer did not have a duty to defend. In this case, however, there is no dispute that the Balestrieris initiated a suit through the filing of a complaint. Accordingly, *Edgerton* is inapposite to this case.

The issue we must address is whether an insurer, which has breached its duty to defend, is relieved from liability for legal expenses that the insured incurs in prosecuting counterclaims that were initiated prior to the dismissal of the original complaint. In addressing this issue, we note that neither party has cited, nor have we located, a Wisconsin case that addresses this issue. Nonetheless, we are unable to discern any basis for treating these expenses differently than other legal expenses incurred in defending a suit. Therefore, if it was necessary for Towne to continue to prosecute its counterclaims to defend against the Balestrieris' claims, these expenses are recoverable despite the fact that they were incurred after the complaint was dismissed.

The trial court found that Towne's decision to continue the prosecution of its counterclaims was part of a

necessary defense strategy. Specifically, the trial court made the following findings of fact:

> I think that given what I have learned from my own review of this file . . . that it was not only appropriate but probably mandatory in this case that the parties had to—in order to defend against the original causes of action had to bring their own counterclaims as well as affirmative defenses.
>
> And I think that the fact that a PR firm appeared at the trial itself or at one of the hearings suggests that this was no ordinary case and that the parties were required to use extraordinary skill in trying to get this case resolved and get a good settlement for [Towne] in this case.
>
> I also am of the belief given—and generally speaking if someone came in here and said we want to keep defending this case after the matter has been dismissed, I would be inclined to endorse [Zurich's] view, however, given this case and given the fact that there were PR firms, given the fact that the parties—at least the substituted counsel for the [Balestrieris] were unhappy with the judge that was assigned to this case and had made attempts at trying to get around this particular judge, I can see where a motion to dismiss without prejudice would be of very little comfort to the plaintiffs in our case for they know that this case would just come back and arise from the Phoenix in some other form and in some other court.

The trial court's findings are supported by the evidence. Expenses incurred by a defendant after the complaint is dismissed generally will not be recoverable. However, in those cases where it is necessary for the defendant to incur legal expenses to properly defend the suit, those expenses are recoverable even if

incurred after dismissal of the complaint.[3] This is such a case. The Balestrieris obtained a voluntary dismissal of their complaint without prejudice as part of their strategy to obtain a different judge to hear the matter. The record indicates that Towne objected to the dismissal of the complaint without prejudice and continued to prosecute its counterclaims for the purpose of defeating this strategy. Moreover, because the voluntary dismissal of the complaint did not fully resolve the matter, but left Towne exposed to further litigation, Towne continued to pursue its counterclaims in an effort to obtain a complete resolution of the case. Finally, we note that prosecution of the counterclaims was found to be a strategy to defend the allegations in the Balestrieri complaint and not designed to impose liability on the Balestrieris. Therefore, we conclude that the trial court properly awarded Towne the attorney fees it expended in prosecuting its counterclaims after the Balestrieri complaint was dismissed.

Finally, Zurich contends that the trial court erred by awarding Towne the attorney fees it incurred in attempting to establish the amount of legal fees expended in the Balestrieri action and the subsequent declaratory judgment action against Zurich. This issue

---

[3] One can imagine a variety of examples of necessary expenses that could be incurred after a voluntary dismissal of the plaintiff's case, which should properly be guarded as consequential damages because of their intimate relationship to the defense of the complaint. For example, the deposition of a witness that would not otherwise be available, the seeking of an interlocutory appeal on a critical issue which will dramatically affect the trial of a matter or the continued development of expert testimony anticipated to be needed at trial when the claim is re-initiated.

was expressly addressed in *Elliott*. There, our supreme court stated:

> The insurer that denies coverage and forces the insured to retain counsel and expend additional money to establish coverage for a claim that falls within the ambit of the insurance policy deprives the insured the benefit that was bargained for and paid for with the periodic premium payments. Therefore, the principles of equity call for the insurer to be liable to the insured for expenses, including reasonable attorney fees, incurred by the insured in successfully establishing coverage.

*Id.* at 322, 485 N.W.2d at 408. Thus, the trial court correctly concluded that Towne was entitled to these fees. Indeed, Towne would be entitled to the fees that it incurred in making this appeal if these expenses were necessary in establishing coverage.

We recognize that an insurer that breaches its duty to defend is exposed to substantial financial penalties. Nonetheless, the cost of defense and the cost necessarily associated with proving the insurer's breach of contract must be borne by someone. Principles of contract law demand that this burden be placed upon the party who breached the contract rather than the innocent insured who was owed a defense. In this case, Zurich may have been able to avoid liability had it requested a bifurcated trial on the issues of coverage and liability and moved to stay the liability proceedings until the issue of coverage was resolved. *See Newhouse*, 176 Wis. 2d at 837-38, 501 N.W.2d at 6. However, because it failed to undertake this procedure, we conclude that the trial court properly concluded that Zurich was liable for all legal expenses Towne incurred from the time the complaint was filed until

the amount of legal fees expended in the Balestrieri action were established.

*By the Court.*—Judgment affirmed.

CANE, P.J. (*dissenting*). I dissent only from that portion of the majority's conclusion that the respondents (Towne) are entitled to recover their attorney fees incurred prior to notifying their insurer of the complaint and in pursuing their counterclaim. Therefore, I would remand the matter back to the trial court for redetermination of attorney fees.

Here, the Balestrieris filed their suit on October 10, 1991, alleging various improper business transactions committed by Towne concerning the Balestrieris' involvement in and subsequent ouster from promoting events at the Alpine Valley Music Theatre and the Riverside Theatre. In their complaint, the Balestrieris sought damages for their injuries allegedly suffered as a result of Towne's actions. This was not an action seeking immediate relief in court, such as an injunction or other proceeding requiring immediate response. Rather than notifying their insurer, Zurich Insurance, Towne immediately elected to retain their own counsel to represent them. Towne did not request Zurich to furnish them with legal counsel or a defense, nor did they seek authorization from Zurich for expenditures for attorney fees. Eventually, in a letter dated October 21, 1991, Towne notified Zurich of Balestrieris' action.[1] After Zurich declined to defend, Towne filed their answer and also asserted a counterclaim asserting sev-

---

[1] Although this letter arguably did not request Zurich to defend the Balestrieri complaint, I agree with the majority that it was sufficient to put Zurich on notice such that it had a duty to defend.

eral causes of action including one for defamation and another dealing with the status of the shareholders.

The Zurich insurance policy requires Towne to give prompt notice of any suit. Also, the policy provides that "No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." Simply put, under the terms of the insurance contract, Zurich's duty to defend Towne did not arise until it was put on notice of the suit. Until it received that notice, Zurich had no duty to pay any expenses voluntarily incurred by Towne. It is not the court's function to rewrite the insurance contract between the parties. Although there was an ongoing dispute with the Balestrieris, there is nothing in the record to suggest that Towne did not have time to notify Zurich of the Balestrieris' complaint and request a defense. They simply elected to immediately proceed with their own counsel.

It is basic insurance law that an insurer's obligation to defend does not arise until the insured notifies the insurer of the complaint. *See* 7C APPLEMAN INSURANCE LAW AND PRACTICE, § 4682 (West Supp. 1994). Therefore, because Towne had sufficient time to notify Zurich of the complaint, but instead elected to retain their own legal counsel, I would hold that Towne is precluded from recovering any defense costs incurred prior to the tender of the defense to Zurich.

I also reject the majority's conclusion that Towne should be entitled to recover their legal costs incurred in prosecuting the counterclaim against the Balestrieris; especially those legal expenses and costs incurred even after the Balestrieri lawsuit was voluntarily dismissed on January 21, 1992. Towne contends that the counterclaim was a good "defense" strategy

and its continuation was necessary to prevent the Balestrieris from refiling their lawsuit. However, Zurich's obligation under its policy with Towne is to "defend any suit" which is defined as: " 'Suit' means a civil proceeding in which damage because of 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' to which this insurance applies are alleged . . . ."

I agree with Zurich that its only obligation under the insurance policy with respect to its defense obligation is to defend suits filed against its insured. The policy does not obligate Zurich to pay legal costs for its insured to prosecute counterclaims. Nor is there an obligation to file suits on the insured's behalf as a buffer to "suits" which might be filed against its insured.

Recently, our Supreme Court in *Edgerton v. General Cas. Co.,* 184 Wis. 2d 750, 781, 517 N.W.2d 463, 477 (1994), held that there was no ambiguity in the term "suit" as used in insurance policies. The *Edgerton* court held that "suit" denotes court proceedings, not a functional equivalent. *Id.* It defined suit as "any proceeding by one person or persons against another or others *in a court of law* in which the plaintiff pursues, *in such court*, the remedy which the law affords him for the redress of an injury or the enforcement of a right, whether at law or equity." *Id.* at 774, 517 N.W.2d at 474 (quoting *State v. P.G. Miron Constr. Co.,* 181 Wis. 2d 1045, 1053, 512 N.W.2d 499, 503 (1994) (emphasis in original)). As succinctly stated: "When there is no suit, there is no duty to defend." *Id.* at 781, 517 N.W.2d at 477.

Therefore, I would conclude that Zurich had no duty to pursue a counterclaim for its insured even though arguably, it might be a good defense strategy. It

may be true that a good defense is a good offense, but that does not create an obligation beyond the terms of the insurance policy which is to defend against any suits filed against its insured. It is not to pursue counterclaims which by their very nature are for the benefit of the person pursuing the counterclaim, in this instance Towne.

I am also more emphatic that pursuing a counterclaim after the lawsuit against the insured has been dismissed is not included within Zurich's obligation to defend suits against it insured. Obviously, when there is no longer a suit, there is no longer a suit to defend. Here, the fear that the Balestrieris might file another lawsuit is irrelevant. As held in *Edgerton,* the threat of litigation or the fear that one might file suit does not trigger an insurer's duty to defend, especially in this case by pursuing a counterclaim.

Accordingly, I would reverse that portion of the judgment awarding attorney fees and costs incurred prior to Towne notifying Zurich of the Balestrieri lawsuit and those attorney fees and costs incurred in pursuing Towne's counterclaim. I would therefore remand the matter back to the trial court for redetermination of attorney fees.